636 S.E.2d 787 (2006)
In the Matter of T.R.P.
No. 629A05.
Supreme Court of North Carolina.
November 17, 2006.
Paul W. Freeman, Jr., Wilkesboro, for petitioner-appellant Wilkes County Department of Social Services.
Robert W. Ewing, Winston-Salem, for respondent-appellee mother.
EDMUNDS, Justice.
In this case we consider whether the trial court lacked jurisdiction to enter a review order when the juvenile petition that initiated the case was not verified as mandated by N.C.G.S. § 7B-403(a). Because we hold that the district court could not exercise subject matter jurisdiction here in the absence of the verification, we conclude that the trial court's order was void ab initio. Accordingly, we affirm the decision of the Court of Appeals vacating the custody review order and dismissing the case.
On 22 August 2003, petitioner Wilkes County Department of Social Services (WCDSS) filed a juvenile petition alleging that respondent-mother's daughter, T.R.P., was a neglected juvenile. When the petition was filed, T.R.P. had been living for approximately four months with her maternal aunt, with whom respondent had placed her. The petition alleged that respondent and her boyfriend were manufacturing methamphetamine in respondent's home and that respondent had not cooperated with WCDSS in establishing a safety plan for her children.[1] Although the juvenile petition setting forth these allegations was notarized, it was neither signed nor verified by the Director of WCDSS or any authorized representative thereof.
In an order signed 6 November 2003, the trial court granted temporary legal and physical custody of T.R.P. and her siblings to WCDSS. After several hearings, the trial court on 15 March 2004 signed an order adjudicating T.R.P. and her siblings as neglected and continuing custody of the children with WCDSS. On 24 May 2004, the trial court held a custody review hearing as required by N.C.G.S. § 7B-906(a). The trial court's resulting order, announced in open court and later filed on 16 June 2004, continued legal custody of T.R.P. with WCDSS and, although the trial court found respondent had "been cooperative with [WCDSS] since the initial adjudication," placed T.R.P. in her father's physical custody when school began, provided he met several specified conditions.
On 3 June 2004, respondent gave written notice of appeal of the custody review order to the Court of Appeals. In her brief to that court, respondent contended for the first time that the trial court lacked jurisdiction to enter the challenged review order because the juvenile petition was not verified as required by law. In a divided opinion, the Court of Appeals vacated the custody review order and dismissed the case, holding that the trial court lacked subject matter jurisdiction over the action. In re T.R.P., 173 N.C.App. 541, 619 S.E.2d 525 (2005).
On 8 November 2005, petitioner filed notice of appeal with this Court based on the dissenting opinion in the Court of Appeals. Petitioner contends that because respondent failed to challenge the trial court's subject matter jurisdiction before appealing the custody review order, she is barred from presenting that issue in the instant appeal. Petitioner also argues that under N.C.G.S. § 7B-906, the trial court had jurisdiction to conduct a review hearing that was independent of its jurisdiction to hear the original juvenile petition.
Jurisdiction is "[t]he legal power and authority of a court to make a decision that binds the parties to any matter properly brought before it." Black's Law Dictionary *790 856 (7th ed.1999) (defining "judicial jurisdiction"). A court must have personal jurisdiction over the parties to "bring [them] into its adjudicative process." Id. at 857, 619 S.E.2d 525. More importantly for our purposes, the court must also have subject matter jurisdiction, or "[j]urisdiction over the nature of the case and the type of relief sought," in order to decide a case. Id.; see also Boyles v. Boyles, 308 N.C. 488, 491, 302 S.E.2d 790, 793 (1983) (noting that subject matter jurisdiction is "the power to pass on the merits of the case"); 6A Strong's North Carolina Index 4th: Courts § 7 (2000) (discussing generally subject matter jurisdiction). "A universal principle as old as the law is that the proceedings of a court without jurisdiction of the subject matter are a nullity." Burgess v. Gibbs, 262 N.C. 462, 465, 137 S.E.2d 806, 808 (1964). Subject matter jurisdiction is the indispensable foundation upon which valid judicial decisions rest, and in its absence a court has no power to act:
A judgment is void, when there is a want of jurisdiction by the court over the subject matter. . . .
"A void judgment is in legal effect no judgment. No rights are acquired or divested by it. It neither binds nor bars any one, and all proceedings founded upon it are worthless."
Hart v. Thomasville Motors, Inc., 244 N.C. 84, 90, 92 S.E.2d 673, 678 (1956) (quoting Stafford v. Gallops, 123 N.C. 19, 21-22, 31 S.E. 265, 266 (1898)).
Our General Assembly "within constitutional limitations, can fix and circumscribe the jurisdiction of the courts of this State." Bullington v. Angel, 220 N.C. 18, 20, 16 S.E.2d 411, 412 (1941). "Where jurisdiction is statutory and the Legislature requires the Court to exercise its jurisdiction in a certain manner, to follow a certain procedure, or otherwise subjects the Court to certain limitations, an act of the Court beyond these limits is in excess of its jurisdiction." Eudy v. Eudy, 288 N.C. 71, 75, 215 S.E.2d 782, 785 (1975), overruled on other grounds by Quick v. Quick, 305 N.C. 446, 290 S.E.2d 653 (1982). Thus, for certain causes of action created by statute, the requirement that pleadings be signed and verified "is not a matter of form, but substance, and a defect therein is jurisdictional." Martin v. Martin, 130 N.C. 27, 28, 40 S.E. 822, 822 (1902) (discussing an unverified amendment to a complaint in a divorce action). In such cases, the filing "is not complete or operative" until certified. Alford v. McCormac, 90 N.C. 151, 152-53 (1884); see In re Green, 67 N.C.App. 501, 504, 313 S.E.2d 193, 195 (1984) ("[T]he failure of the petitioner to sign and verify the petition before an official authorized to administer oaths render[s] the petition fatally deficient and inoperative to invoke the jurisdiction of the court over the subject matter.").
Abuse, neglect, and dependency actions are statutory in nature and are governed by Chapter 7B of the North Carolina General Statutes (the Juvenile Code). Such actions are typically initiated when the local department of social services (DSS) files a petition making appropriate allegations. See N.C.G.S. § 7B-405 (2005) ("An action is commenced by the filing of a petition. . . ."); see also id. § 7B-401 (2005) ("The pleading in an abuse, neglect, or dependency action is the petition."). The Juvenile Code sets out the specific requirements for a valid juvenile petition: "[T]he petition shall be drawn by the [DSS] director, verified before an official authorized to administer oaths, and filed by the clerk, recording the date of filing." Id. § 7B-403(a) (2005).
Although petitioner and the dissenters argue that requiring a verification to invoke the trial court's subject matter jurisdiction elevates form over substance, verification of a juvenile petition is no mere ministerial or procedural act. The dissent cites Alford v. Shaw, a stockholder derivative suit, for the proposition that a failure to verify a complaint is not a jurisdictional defect. Alford v. Shaw, 327 N.C. 526, 398 S.E.2d 445 (1990). However, a shareholder derivative suit "appears to be the only situation where a specific requirement that the pleadings be verified is not considered jurisdictional in nature." State v. Moraitis, 141 N.C.App. 538, 541, 540 S.E.2d 756, 758 (2000) (quoting In re Triscari Children, 109 N.C.App. 285, 288, 426 S.E.2d 435, 437 (1993)). In contrast, a review of the Juvenile Code reveals that, unlike the routine clerical information that must be included in a petition pursuant to *791 N.C.G.S. § 7B-402, verification of the petition in an abuse, neglect, or dependency action as required by N.C.G.S. § 7B-403 is a vital link in the chain of proceedings carefully designed to protect children at risk on one hand while avoiding undue interference with family rights on the other.
A juvenile abuse, neglect, or dependency action under Chapter 7B may be based on an anonymous report, see, e.g., In re Stumbo, 357 N.C. 279, 280, 582 S.E.2d 255, 256 (2003), and, however based, frequently results in DSS' immediate interference with a respondent's constitutionally-protected right to parent his or her children. See In re R.T.W., 359 N.C. 539, 543, 614 S.E.2d 489, 491 (2005) ("Parents have a fundamental right to the custody, care, and control of their children."), superseded by statute on other grounds, Act of Aug. 23, 2005, ch. 398, sec. 12, N.C. Sess. Laws 1455, 1460-61; Owenby v. Young, 357 N.C. 142, 144, 579 S.E.2d 264, 266 (2003) ("[T]he `Due Process Clause . . . protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.' This parental liberty interest `is perhaps the oldest of the fundamental liberty interests'. . . ." (quoting Troxel v. Granville, 530 U.S. 57, 65-66, 120 S.Ct. 2054, 147 L.Ed.2d 49, 56-57 (2000) (plurality))). Accordingly, the relevant statutes require a prompt and thorough assessment of any report of abuse, neglect, or dependency. See, e.g., N.C.G.S. § 7B-302(a) (2005). The gravity of a decision to proceed and the potential consequences of filing a petition are acknowledged in the official manual of the North Carolina Division of Social Services:
Determining whether a child is abused, neglected, or dependent requires careful assessment of all information. . . . The case decision-making process involves, at a minimum, the worker and supervisor or supervisor's designee or staffing team. A broader team approach to decision-making. . . . allows for shared liability and responsibility. Making a decision to substantiate or not can have far-reaching implications for children and families, and it is not a decision that can be taken lightly. . . .
The names of those individuals participating in making the case decision should be documented as well as the basis for the case decision.
. . . Extensive delay in making a case decision can be seen as an unwarranted intrusion in a family and sometimes increases risk for children.
Div. of Soc. Servs., N.C. Dep't of Health & Human Servs., Family Services Manual § 1408, at 36 (Jan. 18, 2002), available at http://info.dhhs.state.nc.us/olm/manuals/dss/csm-60/man/CS1408.pdf. Therefore, given the magnitude of the interests at stake in juvenile cases and the potentially devastating consequences of any errors, the General Assembly's requirement of a verified petition is a reasonable method of assuring that our courts exercise their power only when an identifiable government actor "vouches" for the validity of the allegations in such a freighted action.
Petitioner nevertheless argues that, even in the absence of a verified petition, the trial court had subject matter jurisdiction over the instant proceeding pursuant to section 7B-906, which authorizes a review hearing within ninety days and again within six months "[i]n any case where custody is removed from a parent, guardian, custodian, or caretaker." N.C.G.S. § 7B-906(a) (2005). This statute further states that "[t]he director of social services shall make a timely request to the clerk to calendar each review. . . . The clerk shall give 15 days' notice of the review and its purpose to the parent. . . ." Id.
Petitioner's argument fails to recognize the integrated nature of the statutes constituting the Juvenile Code. Not only did the General Assembly provide that a properly verified juvenile petition would invoke the jurisdiction of the trial court, it further provided that jurisdiction would extend through all subsequent stages of the action. See N.C.G.S. § 7B-201(a) (2005) ("[J]urisdiction shall continue until terminated by order of the court or until the juvenile reaches the age of 18 years or is otherwise emancipated. . . ."). Chapter 7B sets out a sequential process for abuse, neglect, or dependency cases, wherein each required action or event must occur within a prescribed amount of time after the preceding stage in *792 the case. For example, "[t]he adjudicatory hearing shall be held . . . no later than 60 days from the filing of the petition," id. § 7B-801(c) (2005), and "[t]he dispositional hearing shall take place immediately following the adjudicatory hearing," id. § 7B-901 (2005). Similarly, a custody review hearing under section 7B-906 "shall [be] conduct[ed] . . . within 90 days from the date of the dispositional hearing," id. § 7B-906(a), and the resulting "order must be reduced to writing, signed, and entered within 30 days of the completion of the hearing," id. § 7B-906(d) (2005). Thus, a custody review hearing is mandatory only after a dispositional hearing, which, in turn, must be preceded by the filing of a petition and an adjudication.
Because the provisions in Chapter 7B establish one continuous juvenile case with several interrelated stages, not a series of discrete proceedings, we are unpersuaded by petitioner's assertion that the trial court had subject matter jurisdiction over the custody review hearing regardless of whether the original petition invoked the court's jurisdiction over the juvenile proceeding. A trial court's subject matter jurisdiction over all stages of a juvenile case is established when the action is initiated with the filing of a properly verified petition.
Petitioner and the dissenters further contend that allowing a litigant to raise a jurisdictional challenge in a juvenile action long after the proceeding is commenced could disrupt an established program of placement. We must acknowledge that such a strategy is possible in any case where a court lacks subject matter jurisdiction. Nevertheless, we believe the unambiguous statutory language mandates our holding. Faced with similar language pertaining to divorce proceedings, see N.C.G.S. § 50-8 (2005) ("In all actions for divorce the complaint shall be verified in accordance with the provisions of Rule 11 of the Rules of Civil Procedure and G.S. 1-148."), we have held that the trial court did not have jurisdiction in the absence of a verified complaint, Hodges v. Hodges, 226 N.C. 570, 571, 39 S.E.2d 596, 597 (1946). Moreover, while this Court has not previously addressed the jurisdictional effect of verification of a juvenile petition, for more than twenty years our Court of Appeals has consistently held that subject matter jurisdiction over juvenile actions is contingent upon verification of the petition. See In re Triscari Children, 109 N.C.App. 285, 426 S.E.2d 435 (vacating a termination of parental rights order for lack of subject matter jurisdiction because the petition was not verified); In re Green, 67 N.C.App. 501, 313 S.E.2d 193 (vacating and dismissing a juvenile abuse and neglect case for want of subject matter jurisdiction because the DSS representative failed to verify the petition).
When the General Assembly recodified and amended the Juvenile Code in 1998, it chose not to modify the mandatory language relating to verification of the juvenile petition. See Act of Oct. 22, 1998, ch. 202, sec. 6, 1998 N.C. Sess. Laws 695, 742-869; Act of Oct. 27, 1998, ch. 229, secs. 18-28, 1998 N.C. Sess. Laws 1543, 1573-93; see also Act of July 21, 1999, ch. 456, sec. 60, 1999 N.C. Sess. Laws 1865, 1892. "The legislature's inactivity in the face of the [judiciary's] repeated pronouncements [on this issue] can only be interpreted as acquiescence by, and implicit approval from, that body." Rowan Cty. Bd. of Educ. v. U.S. Gypsum Co., 332 N.C. 1, 9, 418 S.E.2d 648, 654 (1992); see also State v. Jones, 358 N.C. 473, 484, 598 S.E.2d 125, 132 (2004) ("We presume, as we must, that the General Assembly had full knowledge of the judiciary's long-standing practice. Yet, during the course of multiple clarifying amendments . . . at no time did the General Assembly amend [the relevant] section. . . ."). As a result, we are satisfied that we have interpreted correctly the intent of the General Assembly when it imposed a verification requirement in the Juvenile Code. See Wells v. Consol. Jud'l Ret. Sys. of N.C., 354 N.C. 313, 319, 553 S.E.2d 877, 881 (2001) ("The legislature is presumed to act with full knowledge of prior and existing law. When the legislature chooses not to amend a statutory provision that has been interpreted in a specific way, we assume it is satisfied with the administrative interpretation." (citation omitted)).
We now turn to petitioner's contention that respondent waived any jurisdictional challenge by submitting to the original adjudicatory and dispositional order of the trial court and thus should not be permitted *793 to challenge the trial court's subject matter jurisdiction in the instant appeal. We disagree. "Jurisdiction rests upon the law and the law alone. It is never dependent upon the conduct of the parties." Feldman v. Feldman, 236 N.C. 731, 734, 73 S.E.2d 865, 867 (1953). Subject matter jurisdiction "`cannot be conferred upon a court by consent, waiver or estoppel, and therefore failure to . . . object to the jurisdiction is immaterial.'" In re Sauls, 270 N.C. 180, 187, 154 S.E.2d 327, 333 (1967) (quoting 1 Strong's North Carolina Index: Courts § 2, at 645-46 (1957) (footnotes omitted)); see also Anderson v. Atkinson, 235 N.C. 300, 301, 69 S.E.2d 603, 604 (1952) ("A defect in jurisdiction over the subject matter cannot be cured by waiver, consent, amendment, or otherwise."); Reid v. Reid, 199 N.C. 740, 743, 155 S.E. 719, 720 (1930) ("Jurisdiction, withheld by law, may not be conferred on a court, as such, by waiver or consent of the parties.").
Because litigants cannot consent to jurisdiction not authorized by law, they may challenge "jurisdiction over the subject matter . . . at any stage of the proceedings, even after judgment." Pulley v. Pulley, 255 N.C. 423, 429, 121 S.E.2d 876, 880 (1961), appeal dismissed and cert. denied, 371 U.S. 22, 83 S.Ct. 120, 9 L.Ed.2d 96 (1962); see also State ex rel. Hanson v. Yandle, 235 N.C. 532, 535, 70 S.E.2d 565, 568 (1952) ("A lack of jurisdiction or power in the court entering a judgment always avoids the judgment, and a void judgment may be attacked whenever and wherever it is asserted. . . ." (citations omitted)). Arguments regarding subject matter jurisdiction may even be raised for the first time before this Court. See Wood v. Guilford Cty., 355 N.C. 161, 164, 558 S.E.2d 490, 493 (2002); Askew v. Leonard Tire Co., 264 N.C. 168, 171, 141 S.E.2d 280, 282 (1965).
Petitioner nevertheless asserts that respondent "consented, at least implicitly" to subject matter jurisdiction by "acquiesc[ing] in the actions of the [trial c]ourt." According to petitioner, because respondent "had prior opportunities to raise the issue [of jurisdiction], but didn't," she "should [be] prevent[ed] . . . from now being able to challenge the [c]ourt's authority." However, we have never found that a party can waive the fundamental requirement that a court have subject matter jurisdiction.
Although petitioner cites Pulley v. Pulley, that case does not support its position. In Pulley, the defendant-husband in a divorce action confessed judgment for payment of alimony. 255 N.C. at 425-26, 121 S.E.2d at 877-78. Several years later, the defendant claimed that his confession of judgment was void. Id. at 427, 121 S.E.2d at 878-79. We reaffirmed that "[a]n absolute want of jurisdiction over the subject matter may be taken advantage of at any stage of the proceedings, even after judgment," id. at 429, 121 S.E.2d at 880, then found that "the superior court . . . had jurisdiction over the subject matter of the proceeding here, the payment of alimony," id. at 430, 121 S.E.2d at 881. We then considered whether defendant was estopped[2] from making challenges on other grounds. Id. at 431-32, 121 S.E.2d at 882. Thus, Pulley does not stand for the proposition that a party may be estopped to argue that a court lacked subject matter jurisdiction. Cf. Stroupe v. Stroupe, 301 N.C. 656, 659-62, 273 S.E.2d 434, 436-38 (1981) (holding that a judgment entered by a court that "was utterly without jurisdiction to proceed" did not constitute a "mere informality" but was instead void, even when the parties "fail[ed] to object in apt time and . . . acquiesc[ed] in the judgment so rendered").
Petitioner also cites Sloop v. Friberg, 70 N.C.App. 690, 320 S.E.2d 921 (1984), and Ward v. Ward, 116 N.C.App. 643, 448 S.E.2d 862 (1994), as persuasive authority for its argument that respondent waived her right to challenge subject matter jurisdiction. Neither opinion is binding on this Court, of course, and each fails upon close reading to support petitioner's claim.
In Sloop, after a mother of three children died in 1978, the children's custody was awarded to the deceased mother's sister and her husband in 1980. 70 N.C.App. at 692, 320 S.E.2d at 923. Two years later, when the custodians petitioned for payment of overdue child support owed by the father, *794 the father responded by petitioning for custody of the children. Id. The trial court ordered that custody remain with the mother's family and that the father pay support. Id. On appeal, the father argued that the trial court lacked subject matter jurisdiction in 1980 when it entered its original custody order. Id. Although the Court of Appeals discussed the father's acquiescence in the original judgment, it held that the trial court in 1980 properly exercised subject matter jurisdiction in accordance with the statutory prerequisites. 70 N.C.App. at 693, 320 S.E.2d at 923.
In Ward, the plaintiff challenged for the first time on appeal the trial court's jurisdiction to enter orders involving equitable distribution and alimony. 116 N.C.App. at 645, 448 S.E.2d at 863. The Court of Appeals noted that the plaintiff withdrew or failed to perfect his initial appeals from both orders and for several years "accepted the benefits of [the equitable distribution] judgment." Id. at 645, 448 S.E.2d at 864. Although the Court of Appeals concluded that the plaintiff "failed to preserve his objection" to the entry of both orders, id., it went on to determine that the trial court had subject matter jurisdiction and that both orders were valid, 116 N.C.App. at 645-47, 448 S.E.2d at 864-65. Thus, we conclude that in both Sloop and Ward, the Court of Appeals' discussion of acquiescence is dicta that is not necessary to the resolution of either case.
In its final argument, petitioner suggests that T.R.P.'s welfare would be jeopardized by vacating the district court's order. We do not discount this concern, but believe that it is speculative and can be resolved by the trial court and the parties. While no statute we have found addresses the situation at bar, the absence of jurisdiction ab initio logically implies that the matter reverts to the status quo ante. See, e.g., N.C.G.S. § 7B-201(b) (2005) (stating that when jurisdiction of a juvenile court terminates, "[t]he legal status of the juvenile and the custodial rights of the parties shall revert to the status they were before the juvenile petition was filed"). Although a social history included in the record indicates that T.R.P. had been placed by her mother with an aunt prior to the filing of the petition in this case, the record is unclear as to T.R.P.'s legal custody at the time the instant petition was filed. Accordingly, we remand this matter to the Court of Appeals for further remand to the trial court for determination of the status quo ante.
However, because dismissal of this case has no res judicata effect, and recognizing that the circumstances affecting the best interest of T.R.P. may well have changed while this case has been in litigation, we note that any party, including WCDSS, can file a new petition in this matter. Cf. Boyd v. Boyd, 61 N.C.App., 334, 336, 300 S.E.2d 569, 571 (1983) (affirming the trial court's dismissal of the plaintiff's divorce action because the complaint was not properly verified, but noting that nothing prevented plaintiff from refiling the action). Unless such a new action is brought, T.R.P. shall remain in the care of her current custodian during the pendency of the hearing on remand.
Long-established public policy disfavoring disruption of the family underlies the verification requirement in the Juvenile Code. This Court observed in In re R.T.W. that the Juvenile Code has numerous purposes, including protection of children by constitutional means that respect both the right to family autonomy and the needs of the child. 359 N.C. at 544, 614 S.E.2d at 492-93. The inherent power of the government to act through its agencies and subdivisions, in this case WCDSS, is subject to restraint in order to preserve and maintain a proper balance between the State's interest in protecting children from mistreatment and the right of parents to rear their children without undue government interference. See In re Stumbo, 357 N.C. at 286, 582 S.E.2d at 260 ("While acknowledging the extraordinary importance of protecting children from abuse, neglect, or dependency . . . we likewise acknowledge the limits within which governmental agencies may interfere with or intervene in the parent-child relationship."). The interpretation urged by petitioner and by the dissenters would upset this balance by allowing a child to be taken from its parents even in the absence of a sworn verification by a Department of Social Services official that the allegations in the petition are true. The statutory requirement for verification of juvenile *795 petitions is a minimally burdensome limitation on government action, designed to ensure that a department of social services intervention that has the potential to disrupt family bonds is based upon valid and substantive allegations before the court's jurisdiction is invoked. Without such a verification, the trial court has no power to act.
We noted above that the verification requirement in a juvenile abuse, neglect, or dependency action is a matter of first impression for this Court. However, because the highest court in North Carolina to address this issue specifically held in 1984 that failure to verify a juvenile petition is a fatal defect, In re Green, 67 N.C.App. at 504, 313 S.E.2d at 195, our holding today should not affect existing practice in these actions. We affirm the decision of the Court of Appeals vacating the custody review order and dismissing this case for lack of subject matter jurisdiction. We also remand this case to the Court of Appeals for further remand to the trial court so that additional proceedings may be held not inconsistent with this opinion.
AFFIRMED and REMANDED.
Justice NEWBY dissenting.
The dispositive question is whether the North Carolina General Assembly designed the verification requirement of N.C.G.S. § 7B-403 as a jurisdictional prerequisite in abuse, neglect, and dependency proceedings. Put simply, did the legislature intend to jeopardize the well-being of a child due to a clerical error by a Department of Social Services ("DSS") employee? The majority determines the legislature crafted N.C.G.S. § 7B-403 with a view towards making a trial court's subject matter jurisdiction in such proceedings contingent on verification of the juvenile petition. This conclusion cannot be reconciled with the principles the General Assembly has directed should govern interpretations of the Juvenile Code, and it is not compelled by our case law addressing the relationship between verification requirements and subject matter jurisdiction. The majority's preference for form over substance in juvenile proceedings threatens to introduce additional instability into the lives of at-risk children. Accordingly, I respectfully dissent.
Before April 2003 respondent-mother obtained temporary custody of T.R.P. and a protective order against T.R.P.'s father. Along with her three minor children, respondent-mother was living at the home of her new boyfriend when police discovered a methamphetamine laboratory there on 21 April 2003. Respondent-mother was charged with child endangerment and felony drug offenses.
Wilkes County Department of Social Services ("WCDSS") intervened at the request of the police and determined the laboratory created a dangerous situation for the three children. Respondent-mother complied with WCDSS's suggestion that her two sons be placed with their father and that T.R.P. be placed with respondent-mother's sister. By 22 August 2003, the voluntary nature of the placement and respondent-mother's refusal to sign and comply with the family service case plan made it necessary for WCDSS to file a petition alleging T.R.P. to be a neglected juvenile. Although the petition identified the petitioner and properly stated the factual allegations of neglect, the WCDSS director failed to sign and verify the petition. WCDSS took no affirmative action when it filed the petition.
Following a hearing on 15 September 2003, the trial court granted temporary legal and physical custody to WCDSS, but continued the adjudication because T.R.P.'s father was in a drug rehabilitation facility and could not be present. Hearings occurred on 16 and 23 February 2004 in which WCDSS presented evidence substantiating the allegations in the petition. The trial court, after finding it had subject matter jurisdiction and WCDSS had shown neglect by clear and convincing evidence, ordered physical and legal custody of T.R.P. to remain with WCDSS. Respondent-mother did not appeal the trial court's decision. T.R.P. continued to reside with her aunt throughout this process.
At a statutorily required custody review hearing on 24 May 2004, the court again received testimony concerning the best interest of T.R.P. It ordered continued legal and physical custody of T.R.P. with WCDSS and future placement, supervised by WCDSS, with T.R.P.'s father. Objecting to the placement *796 of T.R.P. with her father, respondent-mother appealed. For the first time, she argued the trial court lacked subject matter jurisdiction because the petition was not verified.
The majority concludes the General Assembly intended the verification requirement of N.C.G.S. § 7B-403(a) to be jurisdictional and affirms the Court of Appeals decision vacating the custody review order and dismissing the case because the juvenile petition was not verified. However, this result is not required by the Juvenile Code; indeed, such a reading contradicts the directives of the General Assembly.
In matters of statutory construction, our task is to determine the intent of the General Assembly. Person v. Garrett, 280 N.C. 163, 165, 184 S.E.2d 873, 874 (1971) ("The intent of the legislature controls the interpretation of a statute."). Subchapter I of the Juvenile Code governs abuse, neglect, and dependency actions. In Article 1 of Subchapter I, the legislature specifically prescribed that Subchapter I be "interpreted and construed so as to implement the following purposes and policies:"
(1) To provide procedures for the hearing of juvenile cases that assure fairness and equity and that protect the constitutional rights of juveniles and parents;
(2) To develop a disposition in each juvenile case that reflects consideration of the facts, the needs and limitations of the juvenile, and the strengths and weaknesses of the family[;]
(3) To provide for services for the protection of juveniles by means that respect both the right to family autonomy and the juveniles' needs for safety, continuity, and permanence; []
(4) To provide standards for the removal, when necessary, of juveniles from their homes and for the return of juveniles to their homes consistent with preventing the unnecessary or inappropriate separation of juveniles from their parents[; and]
(5) To provide standards, consistent with the Adoption and Safe Families Act of 1997, P.L. 105-89, for ensuring that the best interests of the juvenile are of paramount consideration by the court and that when it is not in the juvenile's best interest to be returned home, the juvenile will be placed in a safe, permanent home within a reasonable amount of time.
N.C.G.S. § 7B-100 (2005).
This Court has recognized "that N.C.G.S. § 7B-100 stresses the paramount importance of the child's best interest and the need to place children in safe, permanent homes within a reasonable time. Whenever possible, [courts should] construe the provisions in Subchapter I to effectuate this intent." In re R.T.W., 359 N.C. 539, 549-50, 614 S.E.2d 489, 496 (2005), superseded by statute on other grounds, Act of Aug. 23, 2005, ch. 398, sec. 12, N.C. Sess. Laws 1455, 1460-61.; see also In re Montgomery, 311 N.C. 101, 109, 316 S.E.2d 246, 251 (1984) ("[T]he fundamental principle underlying North Carolina's approach to controversies involving child neglect and custody [is] that the best interest of the child is the polar star.").
Taken together, the provisions of N.C.G.S. § 7B-100 compel reaching the merits of allegations of child abuse, neglect, and dependency. Such claims are to be fairly heard (subdivision (1)) and decided on the merits (subdivision (2)). The courts are to provide protection for children, recognizing the need for safety, continuity, and permanence (subdivision (3)), and remove children from their homes when necessary (subdivision (4)). Finally, "when reunification is against the child's best interest, subdivision (5) favors placing the child `in a safe, permanent home within a reasonable amount of time.' . . . [because] interminable custody battles do not serve the child's best interest." R.T.W., 359 N.C. at 545, 614 S.E.2d at 493.
After the stated purposes and definitions contained in Article 1, Subchapter I immediately addresses the subject raised by this appeal. Containing two sections, Article 2 ("Jurisdiction") specifies the jurisdictional parameters of the courts to consider allegations of juvenile abuse, neglect, and dependency. The first section grants district courts "exclusive, original jurisdiction over any case involving a juvenile who is alleged to be abused, neglected, or dependent." N.C.G.S. § 7B-200(a) (2005). The second *797 section provides, "When the court obtains jurisdiction over a juvenile, jurisdiction shall continue until terminated by order of the court or until the juvenile reaches the age of 18 years or is otherwise emancipated." Id. § 7B-201(a) (2005). Significantly, no provision of Article 2 makes jurisdiction contingent upon verification of the petition.
We must assume the General Assembly understands the fundamental concepts of jurisdiction and subject matter jurisdiction cited by the majority. Therefore, when the legislature expressly dedicates part of a statutory scheme to jurisdiction, the courts should resist creating jurisdictional requirements elsewhere. The General Assembly could have included a verification requirement in the "Jurisdiction" Article. Instead, consistent with the purposes enumerated in Article 1, the General Assembly chose to provide district courts with broad subject matter jurisdiction over any matter in which a juvenile is "alleged to be abused, neglected, or dependent." Id. § 7B-200(a). The majority's imposition of an additional jurisdictional requirement undermines the comprehensive statutory scheme the legislature designed to protect at-risk children. Since a party may raise a trial court's want of subject matter jurisdiction at any time, our Court should be reluctant to declare a provision jurisdictional unless the plain language of the statute compels such a conclusion.
The verification requirement of N.C.G.S. § 7B-403, on which the majority relies, does not appear in Subchapter I until Article 4 ("Venue; Petitions"). Article 4 nowhere indicates that any of its elements are jurisdictional in nature. Rather, N.C.G.S. § 7B-402 specifies certain requirements of a petition:
The petition shall contain the name, date of birth, address of the juvenile, the name and last known address of the juvenile's parent, guardian, or custodian, and allegations of facts sufficient to invoke jurisdiction over the juvenile. A person whose actions resulted in a conviction under G.S. 14-27.2 or G.S. 14-27.3 and the conception of the juvenile need not be named in the petition. The petition may contain information on more than one juvenile when the juveniles are from the same home and are before the court for the same reason.
Id. § 7B-402(a) (2005) (emphasis added). Tellingly, N.C.G.S. § 7B-402 indicates that it is the "allegations of facts" of the child's situation which must be "sufficient to invoke jurisdiction over the juvenile." Id. The factual allegations, not the form of the petition, determine the question of jurisdiction. Here, respondent-mother does not contend the petition lacks any of the specified information.
Plainly, had it intended verification to be a jurisdictional prerequisite, the General Assembly could have included a verification requirement in Article 2. Not only did the legislature choose not to do this, it did not even deem verification worthy of inclusion among the substantive juvenile petition elements detailed in N.C.G.S. § 7B-402. Instead the legislature placed the verification requirement in N.C.G.S. § 7B-403 ("Receipt of reports; filing of petition") a statute devoted to procedural matters:
All reports concerning a juvenile alleged to be abused, neglected, or dependent shall be referred to the director of the department of social services for screening. Thereafter, if it is determined by the director that a report should be filed as a petition, the petition shall be drawn by the director, verified before an official authorized to administer oaths, and filed by the clerk, recording the date of filing.
N.C.G.S. § 7B-403(a) (2005). The obvious conclusion we should draw is that verification of juvenile petitions is a procedural, not a jurisdictional requirement. While the majority rightly opines that the purpose of verification is to ensure DSS thoroughly investigates allegations of abuse, neglect, and dependency before seeking judicial intervention, it does not follow that the requirement is jurisdictional. Nothing in N.C.G.S. § 7B-403 suggests its provisions should be construed as jurisdictional in nature. The majority simply holds the verification requirement to be so.
Significantly, unlike with other governmental actors, the General Assembly specifically allows the drafting and filing of a juvenile petition by a non-lawyer DSS director. See id. § 84-4 (2005); see also id. § 7B-403(a). This unique authority recognizes the need to seek promptly the supervision of the trial court. Nonetheless, without attorney involvement, *798 procedural errors could be more likely to occur.
The General Assembly anticipated procedural miscues and thus included a remedy in Subchapter I for mistakes like the one that occurred in this case. Errors in the form of a petition, such as a verification omission, can be cured through amendment. N.C.G.S. § 7B-800 provides: "The court may permit a petition to be amended when the amendment does not change the nature of the conditions upon which the petition is based." Id. § 7B-800 (2005). This provision specifically allows the correction of mistakes which do not change the "nature" of the allegations contained in a juvenile petition. Hence, if as the majority opines, the "provisions in Chapter 7B establish one continuous juvenile case with several interrelated stages," WCDSS should be allowed to amend its petition by adding a verification.
Treating the verification requirement as procedural is consistent with the North Carolina Rules of Civil Procedure. Rule 11 ("Signing and verification of pleadings") requires all filings to be made in good faith. Id. § 1A-1, Rule 11(a) (2005). The rule specifically permits a party to sign an unsigned filing, provided he does so promptly after the omission is called to his attention. Id. In juvenile petitions, the DSS director confirms verification by signing the petition. Since Rule 11 allows signatures to be added after filing, the omission of a signature from a juvenile petition is not jurisdictional.
Although there appear to be no North Carolina cases applying Rule 11 to verification requirements, there are many federal ones. As North Carolina's Rule 11 is substantially similar to the federal rule, the decisions of the federal courts are instructive. See Bryson v. Sullivan, 330 N.C. 644, 655, 412 S.E.2d 327, 332 (1992); Turner v. Duke Univ., 325 N.C. 152, 164, 381 S.E.2d 706, 713 (1989). The federal cases hold that failure to comply with a statutory verification requirement is a procedural error subject to waiver. E.g., Rosaly v. Gonzalez, 106 F.2d 169, 171 (1st Cir.1939) (per curiam) ("The law is definite and well settled that any objections to the lack of verification in a petition must be raised immediately or not at all.").
Like the structure of the Juvenile Code, our legal precedents counsel viewing the verification requirement of N.C.G.S. § 7B-403 as procedural and not jurisdictional. In Alford v. Shaw, 327 N.C. 526, 398 S.E.2d 445 (1990), the plaintiffs commenced a shareholders' derivative action alleging fraudulent merger and other unfair acts by the defendants. Id. at 530, 398 S.E.2d at 447. Contrary to N.C.G.S. § 1A-1, Rule 23(b), the plaintiffs did not verify their complaint prior to filing. Id. at 530-31, 398 S.E.2d at 447. More than seven years into the litigation and during the fourth appeal in the case, the defendants argued for the first time that the absence of the statutorily required verification deprived the trial court of subject matter jurisdiction. Id. at 531, 398 S.E.2d at 447. This Court disagreed, holding: (1) the plaintiffs' failure to verify their complaint was a procedural, not a jurisdictional, defect; and (2) the defendants had waived their verification objection by failing to raise the issue earlier. Id. Our Court reasoned that the verification requirement of Rule 23(b) was not jurisdictional but specified the procedure to be followed. Id. Additionally, after noting the verification requirement was crafted to discourage shareholders from pursuing worthless claims in hopes of obtaining nuisance settlements, this Court concluded dismissal in favor of the defendants would be inappropriate since "the vigor with which [the parties] have litigated this case over the span of seven years[] and the massive amount of discovery conducted . . . indicat[e] that the purposes behind the verification rule have been met." 327 N.C. at 532, 398 S.E.2d at 448.
Thus, under Alford, this Court assumes the General Assembly did not intend a verification requirement to be jurisdictional if it is included among the procedures to be followed. Id. at 531-32, 398 S.E.2d 445, 398 S.E.2d at 447-48. Moreover, when verification is not a jurisdictional prerequisite, a party may waive the right to object by failing to raise lack of verification in a timely manner. Id. Had it properly applied the reasoning of Alford to the instant case, the majority would have been compelled to conclude the verification requirement of N.C.G.S. § 7B-403 *799 is not jurisdictional and that respondent-mother waived her objection.
This Court's reluctance to deem procedural matters jurisdictional in Alford is consistent with our prior holding in Pulley v. Pulley, 255 N.C. 423, 121 S.E.2d 876 (1961), appeal dismissed and cert. denied, 371 U.S. 22, 83 S.Ct. 120, 9 L.Ed.2d 96 (1962). There, the defendant entered a judgment by confession for alimony under N.C.G.S. § 1-247 (repealed 1967). Id. at 428, 121 S.E.2d 876, 121 S.E.2d at 879. The defendant later argued that he was not bound by the judgment because he had not verified his confession pursuant to N.C.G.S. § 1-248 (repealed 1967). Id. As in the present case, he argued the verification requirement was jurisdictional. However, this Court determined the trial court had general subject matter jurisdiction over alimony actions under N.C.G.S. § 50-1 (repealed 1971), and hence, the defendant was "estopped to question the validity of his own confessed judgment for alimony." 255 N.C. at 430-32, 121 S.E.2d at 881-82.
The majority's reliance on our divorce jurisprudence is misplaced. Chapter 50 ("Divorce and Alimony") has no Article expressly devoted to jurisdiction. Unlike the verification required in N.C.G.S. § 7B-403 or N.C.G.S. § 1A-1, Rule 23(b), the verification requirement for divorce proceedings appears in a statute containing the substantive elements of divorce complaints. See N.C.G.S. § 50-8 (2005); see also Eudy v. Eudy, 288 N.C. 71, 74, 215 S.E.2d 782, 785 (1975) ("[T]he allegations required by G.S. 50-8 are indispensable, constituent elements of a divorce action and must be established either by the verdict of a jury or by a judge, as the pertinent statute may permit."), overruled on other grounds by Quick v. Quick, 305 N.C. 446, 290 S.E.2d 653 (1982).
Notably, most of the divorce cases relied upon by the majority were decided well before North Carolina made the fundamental change from code pleading to notice pleading. See generally Sutton v. Duke, 277 N.C. 94, 176 S.E.2d 161 (1970) (acknowledging North Carolina's transition to a notice pleading system through revision of the North Carolina Rules of Civil Procedure). The majority's holding rests upon vestiges of our code pleading jurisprudence. Notice pleading is designed to have matters evaluated on the merits. See Mangum v. Surles, 281 N.C. 91, 99, 187 S.E.2d 697, 702 (1972) ("[I]t is the essence of the Rules of Civil Procedure that decisions be had on the merits and not avoided on the basis of mere technicalities."); 1 G. Gray Wilson, North Carolina Civil Procedure § 1-2, at 2 (2d ed. 1995) ("It was the intent of the General Statutes Commission that drafted the civil rules to develop a scheme under which cases could be disposed of on the merits and not on the basis of procedural errors."). North Carolina modeled its notice pleading approach after that of the federal system. Sutton, 277 N.C. at 99, 176 S.E.2d at 164. The U.S. Supreme Court has declared that "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." Conley v. Gibson, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80, 86 (1957). Gamesmanship, which is to be avoided in general, should never be allowed to interfere with custody determinations concerning the best interests of at-risk children.
The majority also relies on a Court of Appeals decision, In re Green, 67 N.C.App. 501, 313 S.E.2d 193 (1984), which held the verification requirement in juvenile neglect cases to be jurisdictional. Id. at 504, 313 S.E.2d at 195. As a decision from a lower court, Green is not controlling. In Green, the Court of Appeals rigidly applied a nineteenth-century affidavit case, Alford v. McCormac, 90 N.C. 151, 152-53 (1884), and failed to engage in statutory construction. The opinion presents no compelling reasoning for us to follow.
Although I agree with the majority that the General Assembly attempted to balance the rights of parents and children, the majority decision does little to protect parents and much to harm children. The majority suggests verification protects parents by having an identifiable government actor "vouch" for the validity of the allegations in a juvenile petition to ensure that a "department of social services intervention . . . is based upon valid and substantive allegations." While these goals may be advanced if the omission were intentional and the missing verification *800 noticed before a custody hearing, they are not furthered by vacating custody orders entered after evidence has been received at a hearing.
Here, there is no hint that WCDSS acted improperly. In fact, WCDSS showed considerable restraint by attempting to resolve the situation without judicial intervention, and the trial court found that WCDSS was entirely justified in filing a petition to have T.R.P. adjudicated a neglected juvenile. The petition identified the petitioner, and the failure to verify it appears to be a mere administrative oversight. To ignore an adjudication on the merits because of inadvertence hardly promotes the best interest of T.R.P. As such, the majority's interpretation of N.C.G.S. § 7B-403 cannot be reconciled with the principles of construction set out in N.C.G.S. § 7B-100.
Nor is verification the vital safeguard portrayed by the majority. The goal is to initiate court intervention only into meritorious cases in which evidence exists to support the allegations. Once the process is begun, however, it is the in-court testimony, not the original verification, that determines the need and degree of DSS intervention. In fact, in an emergency situation, DSS is authorized to act without a petition. N.C.G.S. § 7B-500 (2005). Whether or not the petition is verified, DSS intervention could still be inappropriate. Were a petition to be filed because of ill motives, the trial court could address the problem by issuing sanctions against the responsible party. Such a tailored response is preferable to dismissing all juvenile cases that originated with unverified petitions.
In this case, the petition contained sufficient allegations of neglect to invoke the trial court's jurisdiction. Id. § 7B-200(a). As envisioned by N.C.G.S. § 7B-100(2), the trial court has entered a judgment "that reflects consideration of the facts, the needs and limitations of the juvenile, and the strengths and weaknesses of the family." Id. § 7B-100(2). The majority admits the court properly found T.R.P. to be neglected and developed a placement plan in her best interest. Nonetheless, after more than two years, the majority would now disrupt the placement of the child and return her to the status quo ante. This outcome clearly contradicts the statutory directive "that when it is not in the juvenile's best interest to be returned home, the juvenile [should] be placed in a safe, permanent home within a reasonable amount of time." Id. § 7B-100(5). Absent a clear statutory mandate, I cannot agree with the majority that careful consideration of a child's best interest by a court with general subject matter jurisdiction over abuse, neglect, and dependency actions should be disregarded because of a technical omission that in no way affected the court proceedings or harmed anyone involved.
Moreover, the majority's decision is not limited to the facts of this case; its potential disruptive effect on abused, neglected, or dependent children is staggering. Children are often placed with persons who have no legal right to custody apart from a court order. Even after the passage of considerable time, a biological parent who finds a procedural defect in the DSS petition could completely undermine years of stability and healing by setting aside all the court's orders addressing the merits and demanding a return to the status quo ante without regard to the child's welfare. Children on the doorstep of adoption might be returned to their biological parents only to be removed again. In short, the majority's approach will potentially "result in protracted custody proceedings that leave . . . the child in legal limbo. . . . thwart[ing] the legislature's wish that children be placed `in . . . safe, permanent home[s] within a reasonable amount of time.'" R.T.W., 359 N.C. at 547, 614 S.E.2d at 494 (alterations in original) (quoting N.C.G.S. § 7B-100(5)).
At its core, this case is about two different types of neglect. T.R.P.'s mother neglected her daughter; a DSS employee neglected to sign the petition. By holding that an administrative oversight in failing to verify the petition is jurisdictional, the majority has made the child the victim of both.
Chief Justice PARKER and Justice BRADY join in this dissenting opinion.
NOTES
[1] Although respondent-mother has three children, only the custody of T.R.P. is at issue in this case.
[2] Estoppel and waiver are distinct doctrines. Although petitioner argues only waiver in its brief, some of the cases cited by petitioner address the issue in terms of estoppel. In our analysis, we will echo the terminology used in the opinion under discussion.