LORENZ RINNA, OBO CITY OF MANNHEIM DEPARTMENT OF CHILDREN'S SERVICES, PLAINTIFFS v. STEVEN B., AND SABINE B., DEFENDANTS

No. COA09-845

(Filed 22 December 2009)

**1. Appeal and Error— motion to amend record on appeal—attachment—of necessary documents**

The Court of Appeals did not sanction respondents for violations of the appellate rules since none of the violations were jurisdictional, nor did they rise to the level of being gross and substantial. Petitioner's motion to dismiss was deemed, in the alternative, to be a motion to amend the record on appeal to add the necessary attachments to the record on appeal.

**2. Child Custody, Support, and Visitation— petition filed under Hague Convention—verification requirement for petition—motion to dismiss**

The failure of the trial court to verify under N.C.G.S. § 50-308(a) a petition that was filed under the Hague Convention

to return a minor child to Germany deprived the court of subject matter jurisdiction over that petition, and the order granting relief under the Hague Convention was vacated. The juvenile proceeding initiated by DSS remained pending because respondents had not yet obtained a ruling on their motion to dismiss the juvenile petition.

Appeal by respondents from orders entered 14 April 2009 and 28 April 2009 by Judge Paul Quinn in Carteret County District Court. Heard in the Court of Appeals 9 November 2009.

*Andrew A. Lassiter for plaintiff-appellee Mannheim Department of Children's Services; and Stephanie Sonzogni for petitioner-appellee Carteret County Department of Social Services.*

*Duncan B. McCormick for respondent-appellant father.*

*Wyrick Robbins Yates & Ponton LLP, by Tobias S. Hampson, for respondent-appellant mother.*

GEER, Judge.

Respondents appeal from the trial court's orders mandating the return of their minor child, Christopher,[1] to Germany under the Hague Convention on the Civil Aspects of International Child Abduction ("the Hague Convention"). The United States is a party to the Hague Convention. *Bader v. Kramer*, 445 F.3d 346, 349 (4th Cir. 2006). The purpose of the Hague Convention is "to secure the prompt return of children wrongfully removed to or retained in any Contracting State" and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Hague Convention art. 1. "The Hague Convention provides a mandatory remedy of return that is meant both 'to preserve the status quo' with respect to child custody and 'to deter parents from crossing international boundaries in search of a more sympathetic court.'" *Bader*, 445 F.3d at 349 (quoting *Miller v. Miller*, 240 F.3d 392, 398 (4th Cir. 2001)).

The United States implemented the Hague Convention through the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. § 11601 *et seq.* (2006). State and federal courts have concurrent juris-

---

1. The pseudonym "Christopher" is used throughout this opinion to protect the juvenile's privacy and for ease of reading.

diction over an action brought under the Hague Convention. 42 U.S.C. § 11603 (a) (2006). In North Carolina, a petition brought under the Hague Convention is governed by Part 3 of Article 2 of the Uniform Child-Custody Jurisdiction and Enforcement Act ("UCCJEA"), N.C. Gen. Stat. § 50A-301 *et seq.* (2007).

The Hague Convention petition filed in this case by the Mannheim Department of Children's Services ("Mannheim DCS") was not verified in violation of N.C. Gen. Stat. § 50A-308(a) (2007). In *In re T.R.P.*, 360 N.C. 588, 591, 636 S.E.2d 787, 790 (2006), the Supreme Court held that the failure to verify a juvenile petition deprives the trial court of subject matter jurisdiction, reasoning that when a parent's constitutionally protected rights to his or her child are at stake, verification is no "mere ministerial or procedural act." Because we believe the reasoning of *T.R.P.* applies equally to petitions filed under the Hague Convention, we vacate the trial court's order for lack of subject matter jurisdiction.

### Facts

On 28 August 2008, the Carteret County Department of Social Services ("DSS") filed a petition alleging that Christopher was an abused, neglected, and dependent juvenile. DSS alleged in the petition that it was notified in August 2008 by the United States Department of State that Christopher, a German citizen, had been illegally removed from Germany by respondent mother and was living with respondent mother and respondent father in Carteret County, North Carolina. The State Department sought DSS' assistance with respect to Christopher.

According to the petition, DSS also received a letter from Mannheim DCS dated 14 August 2008, asserting that respondent mother's removal of Christopher to the United States was in direct contravention of a German court order granting Mannheim DCS guardianship and placement authority over Christopher. The letter indicated that Christopher was not safe living with respondent father because the father had been convicted in Germany of physically abusing Christopher's step-sister and was strongly suspected of having caused Shaken Baby Syndrome in Christopher's infant brother. Further, Mannheim DCS believed that respondent mother was not capable of protecting Christopher because she had also been the victim of abuse by respondent father. Mannheim DCS requested that DSS take steps to ensure the safety and welfare of Christopher.

The DSS petition alleged that on 22 August 2008, it received a copy of a German court order dated 12 March 2008 that named Mannheim DCS as Christopher's guardian and withdrew custody from respondents. The order found that Christopher had initially been placed in foster care but that he "was taken by his mother into her household on 12/16/2007." According to the order, respondent mother had then broken into Christopher's foster home, stolen his passport, and removed him from Germany without the consent of Mannheim DCS.

On 29 August 2008, the trial court entered a non-secure custody order placing Christopher in the custody of DSS. On 3 September 2008, DSS amended the juvenile petition to withdraw the allegations of neglect and abuse, leaving only the allegation of dependency. Respondents filed a joint motion to dismiss the petition on 14 October 2008 and a joint answer to the petition on 28 October 2008.

DSS filed a motion to continue the adjudication proceedings on 24 November 2008 to allow time for Mannheim DCS to seek registration and enforcement of the German orders and to obtain translation of those orders since respondents had expressed their intent to challenge the facts found in the orders. On 7 January 2009, DSS filed an additional motion explaining that the trial court had emergency jurisdiction to enter the non-secure custody order, but that the trial court could continue to exercise jurisdiction in the juvenile proceeding only upon receipt of an order from the German courts indicating that those courts did not wish to retain jurisdiction. The DSS motion requested that the trial court communicate with Germany to determine if Germany intended to retain jurisdiction in the matter or, in the alternative, requested that the trial court grant DSS additional time to allow Mannheim DCS to provide an order addressing the issue.

On 5 February 2009, Lorenz Rinna, on behalf of Mannheim DCS, filed in Carteret County District Court a "Complaint/Petition Under the Hague Convention," seeking an order returning Christopher to Germany under the Hague Convention. In an order entered 14 April 2009, the trial court granted Mannheim DCS' petition, concluding that Mannheim DCS has legal custody of Christopher and that it was in the best interests of Christopher that he be immediately returned to the custody of Mannheim DCS. The trial court stayed the order pending appeal, but ordered that Christopher remain in the temporary custody of DSS. The trial court also consolidated the juvenile proceedings with the Hague Convention proceedings. The trial court entered

an amended order on 28 April 2009 that caused the order returning Christopher to Germany to be entered in both the juvenile proceeding and the Hague Convention proceeding. Respondents timely appealed to this Court.

## Discussion

[1] As an initial matter, we address Mannheim DCS' motion to dismiss respondents' appeal. We decline to sanction respondents for violations of the appellate rules because none of the alleged violations are jurisdictional, and we cannot conclude, under the circumstances of this case, that any violations rise to the level of being gross and substantial. *See Dogwood Dev. & Mgm't Co. v. White Oak Transp. Co.*, 362 N.C. 191, 199, 657 S.E.2d 361, 366 (2008) ("[T]he appellate court may not consider sanctions of any sort when a party's noncompliance with nonjurisdictional requirements of the rules does not rise to the level of a 'substantial failure' or 'gross violation.' In such instances, the appellate court should simply perform its core function of reviewing the merits of the appeal to the extent possible.").

One issue raised by Mannheim DCS' motion does warrant further discussion. The record on appeal as filed with this Court contains Mannheim DCS' petition under the Hague Convention, but does not indicate that the petition had any attachments. In her brief on appeal, respondent mother argues that the petition should have been dismissed because it did not attach certified copies of the order sought to be enforced. Mannheim DCS has, however, submitted the affidavit of a Deputy Clerk of Court for Carteret County, Lanie B. Gray, attesting that a certified copy of the child custody order of the Mannheim Family Court in Germany was in fact filed as an attachment to the Hague Convention petition.

Respondent father's attorney acknowledges that he took responsibility for preparing the record on appeal. In his response to the motion to dismiss, counsel pointed out that the German orders, including the one attached to the Hague Convention petition, were attached to multiple pleadings. He explained: "I elected to include these documents only once . . . ." He indicated to the parties that he was doing so in a cover letter sent with the proposed record on appeal to the other parties. No one objected to this approach.

We appreciate counsel's intent to limit the size of the record on appeal by eliminating duplicative documents. We do not, however, agree with how he went about doing so, and we have concerns

about the other parties' failure to properly review the proposed record on appeal.

First, nothing in the record on appeal advises the Court that duplicative documents have been omitted. At the place in the record in which a document was omitted, counsel should have included a notation of that fact. In other words, if a document had multiple attachments, counsel should have included a page listing the attachments that were omitted and referring to the pages in the record on appeal where copies of those documents could be found.

Second, when a document is necessary to establish the jurisdiction of the trial court, it should be included in the record on appeal. Such a document is a "paper[] filed . . . which [is] necessary to an understanding of all errors assigned unless they appear in the verbatim transcript of proceedings which is being filed with the record pursuant to Rule 9(c)(2)" and must be included in the record on appeal. N.C.R. App. P. 9(a)(1)(j). As this Court recently emphasized, subject matter jurisdiction may not be waived, and this Court has not only the power, but the duty to address the trial court's subject matter jurisdiction on its own motion or *ex mero motu*. *In re C.N.C.B.*, 197 N.C. App. 553, 555, 678 S.E.2d 240, 241 (2009). Consequently, if the record on appeal omits a document necessary to establish the trial court's jurisdiction—without any indication to this Court that the document has been omitted for space reasons—the Court could erroneously vacate the appealed order for lack of jurisdiction.

Finally, although respondent father, whose counsel prepared the record on appeal, did not argue that the Hague Convention petition failed to attach the German orders, respondent mother did make this argument, apparently not realizing that respondent father's counsel had elected to omit the filed documents. Since respondent mother is an appellant, she had equal responsibility with respondent father for ensuring that the record on appeal contained all the documents required by Rule 9 of the Rules of Appellate Procedure. Counsel cannot simply assume that his or her co-counsel has properly compiled the record on appeal. On the other hand, counsel for respondent father should not have remained silent when he received respondent mother's brief and saw her mistake.

Mannheim DCS is not, however, totally without fault. Respondent father's counsel's letter did explain what he had done in preparing the record on appeal. Moreover, a quick review of the record on appeal, which is not voluminous, would have revealed to Mannheim DCS that

the attachments to its petition had been omitted. The proper procedure would have been to object to the documents' omission. If the omission was discovered after the docketing of the record on appeal in this Court, Mannheim DCS could have moved to amend the record on appeal to add the necessary attachments. Mannheim DCS has yet to do so.

Nonetheless, we deem its motion to dismiss to be, in the alternative, a motion to amend the record on appeal, and we allow that motion. We, therefore, need not address respondent mother's argument that the Hague Convention petition should have been dismissed for failure to attach the German order.

[2] Turning to the merits, respondent father first argues that the trial court lacked subject matter jurisdiction over the Hague Convention petition filed by Mannheim DCS because that petition was not verified. N.C. Gen. Stat. § 50A-302 (2007), located in Part 3 of Article 3 of the UCCJEA, provides that "a court of this State may enforce an order for the return of the child made under the Hague Convention on the Civil Aspects of International Child Abduction as if it were a child-custody determination." N.C. Gen. Stat. § 50A-308(a) provides:

> A petition under this Part [3] must be verified. Certified copies of all orders sought to be enforced and of any order confirming registration must be attached to the petition. A copy of a certified copy of an order may be attached instead of the original.

Thus, the Hague Convention petition filed by Mannheim DCS was required to be verified.

The text of Mannheim DCS' Hague Convention petition asserts that it is verified, but no verification page is included within the record on appeal. Mannheim DCS has not asserted that a verification was erroneously omitted from the record on appeal, although actually filed. We must, therefore, conclude that the petition was not verified. We agree with respondent father that the failure to verify the petition deprived the trial court of subject matter jurisdiction in this matter.

" 'Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it.' " *In re McKinney*, 158 N.C. App. 441, 443, 581 S.E.2d 793, 795 (2003) (quoting *Haker-Volkening v. Haker*, 143 N.C. App. 688, 693, 547 S.E.2d 127, 130, *disc. review denied*, 354 N.C. 217, 554 S.E.2d 338 (2001)). It is " 'the most critical aspect of the court's authority to act.' " *Id.* (quoting *Harris v. Pembaur*, 84 N.C. App. 666, 667, 353

S.E.2d 673, 675 (1987)). Since "a court's inherent authority does not allow it to act where it would otherwise lack jurisdiction[,]" the question of subject matter jurisdiction must be determined as a threshold matter. *Id.*

In *T.R.P.*, 360 N.C. at 594-95, 636 S.E.2d at 792, the Supreme Court vacated a child custody review order in a neglect proceeding for lack of subject matter jurisdiction because the initial juvenile petition was not verified. The Court explained that the "verification of a juvenile petition is no mere ministerial or procedural act." *Id.* at 591, 636 S.E.2d at 790. Instead, "verification of the petition in an abuse, neglect, or dependency action as required by N.C.G.S. § 7B-403 is a vital link in the chain of proceedings carefully designed to protect children at risk on one hand while avoiding undue interference with family rights on the other." *Id.*, 636 S.E.2d at 791.

The Court emphasized that a juvenile abuse, neglect or dependency action "frequently results in DSS' immediate interference with a respondent's constitutionally-protected right to parent his or her children." *Id.* at 591-92, 636 S.E.2d at 791. The Court then concluded:

> Therefore, given the magnitude of the interests at stake in juvenile cases and the potentially devastating consequences of any errors, the General Assembly's requirement of a verified petition is a reasonable method of assuring that our courts exercise their power only when an identifiable government actor "vouches" for the validity of the allegations in such a freighted action.

*Id.* at 592, 636 S.E.2d at 791.

While *T.R.P.* did not involve a Hague Convention petition, the reasoning appears equally applicable to those petitions. We can see no meaningful basis for distinguishing between a juvenile petition and a Hague Convention petition when it comes to the verification requirement. "The Hague Convention provides *a mandatory remedy of return* that is meant both to preserve the status quo with respect to child custody and to deter parents from crossing international boundaries in search of a more sympathetic court." *Bader*, 445 F.3d at 349 (internal quotation marks omitted) (emphasis added). Because of the mandatory nature of the remedy under the Hague Convention, which entails removing a child from a parent and returning the child to another country, the interests at stake have the same magnitude and the potential consequences of any error would be just as devastating as with a juvenile petition.

Accordingly, we hold that the failure to verify a petition filed pursuant to the Hague Convention deprives the trial court of subject matter jurisdiction over that petition. Since the petition in this case was not verified, the trial court lacked jurisdiction, and we are required to vacate the order granting relief under the Hague Convention. Because of our decision with respect to the Hague Convention petition, we need not address respondents' remaining arguments regarding that petition.

The trial court entered the order both in the Hague Convention proceeding and the juvenile proceeding. Our holding that the trial court lacked subject matter jurisdiction applies only to the Hague Convention proceeding. The juvenile proceeding initiated by DSS remains pending. While respondent mother makes various arguments on appeal as to why the juvenile proceeding should also have been dismissed, those arguments were the subject of a motion to dismiss filed in the trial court that was not ruled upon. Rule 10(b)(1) of the Rules of Appellate Procedure requires a complaining party to "obtain a ruling upon the party's request, objection, or motion" before this Court can exercise appellate review. As respondents have not yet obtained a ruling on their motion to dismiss the juvenile petition, there is nothing for this Court to review. That motion should be addressed in the first instance by the trial court on remand.

Vacated in part; remanded in part.

Judges McGEE and ROBERT HUNTER, JR. concur.