IN THE MATTER OF: Dj.L., D.L., AND S.L., MINOR CHILDREN

No. COA07-31

(Filed 19 June 2007)

**1. Child Abuse and Neglect— verification of petition—drawn, verified, filed—separate requirements**

The phrases beginning with "drawn," "verified," and "filed" in N.C.G.S. § 7B-403(a) (concerning verification of juvenile petitions) are separate requirements.

**2. Child Abuse and Neglect— petition—signed by social services employee—standing to initiate action**

A juvenile petition contained sufficient information from which the trial court could determine that the person who signed the petition had standing to initiate an action under N.C.G.S. § 7B-403(a), construing the juvenile petition as to do substantial justice. It was not argued that the person signing the petition was not an authorized representative of the director of the county department of social services or that she exceeded the scope of her authority.

**3. Child Abuse and Neglect— petition—signed by identifiable social services employee**

Where an identifiable employee of the Youth and Family Services Division of the Mecklenburg County Department of Social Services actually signed and verified a juvenile petition, the case was not controlled by *In re T.R.P.*, 173 N.C. App. 541, (which held that there was no subject matter jurisdiction for a juvenile petition where the petition was neither signed nor verified).

**4. Child Abuse and Neglect— delay between filing and hearing—less than six months—not prejudice per se**

A delay between the filing of a juvenile petition and the hearing did not present an extraordinary delay resulting in prejudice per se (and thus reversible error) because the delay was less than

**IN RE Dj.L., D.L., & S.L.**

[184 N.C. App. 76 (2007)]

six months, which would have been within the trial court's statutory authority for granting a continuance.

**5. Termination of Parental Rights— waiver of pretrial hearing—not ineffective assistance of counsel**

General averments about waiving a pretrial hearing were not sufficient to establish prejudice and ineffective assistance of counsel in a termination of parental rights hearing.

**6. Termination of Parental Rights— waiver of defective service of process—not ineffective assistance of counsel**

The waiver of the defense of defective service of process did not constitute ineffective assistance of counsel in a termination of parental rights case. Litigants often choose to waive this defense when they had actual notice of the action and when the immediate and inevitable response of the opposing party would be to reserve the process.

**7. Constitutional Law— effective assistance of counsel—vigorous representation—overwhelming evidence**

Respondent was not deprived of effective assistance of counsel at a termination of parental rights hearing where counsel was familiar with the substantive issues in the case, as well as respondent's uncooperative personality, and counsel's representation was vigorous and zealous, if imperfect. DSS presented overwhelming evidence to support at least one ground for termination of respondent's parental rights, and it is difficult to see a defense on which respondent could have prevailed.

Appeal by respondent mother from judgment entered 6 November 2006 by Judge Regan Miller in District Court, Mecklenburg County. Heard in the Court of Appeals 14 May 2007.

*Kathleen Widelski, Edward Yeager, and Tyrone C. Wade, for petitioner-appellee Mecklenburg County Department of Social Services.*

*McDaniel & Anderson, LLP by John M. Kirby for Guardian Ad Litem.*

*Jeffrey L. Miller for respondent-appellant.*

STROUD, Judge.

Respondent Marie L. appeals the trial court order terminating her parental rights to three children, Dj.L., D.L., and S.L. This order was

entered in District Court, Mecklenburg County by Judge Regan Miller on 6 November 2006, following a termination hearing at which respondent was represented by appointed counsel. The trial court terminated respondent's parental rights on three grounds: (1) respondent neglected the children, (2) respondent willfully left the children in foster care for more than twelve months without making reasonable progress under the circumstances toward correcting the conditions that led to the children's removal from the home, and (3) respondent willfully failed to pay a reasonable portion of the cost of the children's care for a continuous period of more than six months next preceding filing of the petition for termination by the Mecklenburg County Department of Social Services [DSS]. The trial court's termination of respondent's parental rights was supported, in part, by findings that respondent failed to attend to the medical needs of her children, including the needs of Dj.L. who has juvenile diabetes; respondent failed to attend medical appointments for the children; respondent failed to educate herself on the proper care of Dj.L.'s condition, which is treated with an insulin pump; respondent failed to obtain and maintain stable housing; respondent's failures were, at times, attributable to marijuana use; respondent failed to complete substance abuse treatment and follow after-care recommendations; and respondent paid zero dollars toward the cost of care for her children in foster care.

Respondent raises three questions on appeal: (1) whether DSS lacked standing to file a termination petition because it was never awarded custody of the children by a court of competent jurisdiction, (2) whether the trial court erred by holding a termination hearing approximately six months after DSS filed its petition for termination, and (3) whether the trial court erred by terminating respondent's parental rights because respondent did not receive effective assistance of counsel during the termination hearing. We affirm the trial court order.

I. Standing

[1] Respondent argues that DSS lacked standing to file a petition for termination of her parental rights to Dj.L., D.L., and S.L. In support of her argument, respondent emphasizes that N.C. Gen. Stat. § 7B-1103(3) (2005) provides that a county department of social services may file a petition to terminate parental rights only when it has been given custody of a juvenile by a court of competent jurisdiction. Respondent argues that the trial court in this case did not have jurisdiction to grant custody of Dj.L., D.L., and S.L. to DSS because DSS's

juvenile petition alleging that the children are dependent and neglected was not properly verified.

Respondent cites *In re T.R.P.*, 360 N.C. 588, 636 S.E.2d 787 (2006), for the proposition that a juvenile petition that is not properly verified does not confer subject matter jurisdiction on the trial court. The defect in verification identified by respondent is that the underlying petition fails to state that the affiant, Betty Hooper, is either the director of DSS or an authorized agent of the director. Based on this alleged defect, respondent concludes that the adjudication order resolving DSS's juvenile petition is void and that DSS was never granted custody of Dj.L., D.L., and S.L. by a court of competent jurisdiction; therefore, respondent reasons that DSS did not have standing to file a petition for termination of her parental rights under section 7B-1103(3). This argument is without merit.

N.C. Gen. Stat. § 7B-403(a) (2005) provides that a juvenile petition alleging dependency, abuse, or neglect "shall be drawn by the director, verified before an official authorized to administer oaths, and filed by the clerk, recording the date of filing." We read the phrases beginning with "drawn," "verified," and "filed" to be separate requirements.

[2] First, N.C. Gen. Stat. § 7B-403(a) requires a juvenile petition alleging abuse, neglect, or dependency to be "drawn by the director." N.C. Gen. Stat. § 7B-101(10) (2005) defines "director" as "[t]he director of the county department of social services in the county in which the juvenile resides or is found, or the director's representative as authorized in G.S. § 108A-14." N.C. Gen. Stat. § 108A-14(b) (2005) permits the director of a county department of social services to "delegate to one or more members of his staff the authority to act as his representative." Such delegation may extend to the director's duty "[t]o assess reports of child abuse and neglect and to take appropriate action to protect such children" pursuant to Chapter 7B. N.C. Gen. Stat. § 108A-14(a)(11), (b).

Here, the petition alleging Dj.L., D.L., and S.L. to be dependent and neglected juveniles states, in part, that "Betty Hooper, Petitioner, ha[s] sufficient knowledge or information to believe that a case has arisen which invokes the juvenile jurisdiction of the Court." Betty Hooper signed the document as the "petitioner" and listed her address as "Youth and Family Services," which is a division of the Mecklenburg County Department of Social Services. From the language above, the trial court knew that Betty Hooper was an employee

**IN RE Dj.L., D.L., & S.L.**

[184 N.C. App. 76 (2007)]

of Youth and Family Services, who had actual knowledge of the factual basis for the allegations in the juvenile petition.

Although the best practice is to include a distinct statement that the petitioner is the director of the county department of social services or is an authorized representative of the director, we hold that the juvenile petition in the case *sub judice* contained sufficient information from which the trial court could determine that Betty Hooper had standing to initiate an action under section 7B-403(a). In so holding, we construe the juvenile petition "as to do substantial justice." N.C. Gen. Stat. § 1A-1, Rule 8 (2005) ("All pleadings shall be so construed as to do substantial justice."). We emphasize that respondent has never argued, and does not now argue, that Betty Hooper is not an authorized representative of the Director of the Mecklenburg County Department of Social Services or that she exceeded the scope of her authority by filing the juvenile petition.

**[3]** Second, N.C. Gen. Stat. § 7B-403(a) requires a petition alleging abuse, neglect, or dependency to be "verified before an official authorized to administer oaths." N.C. Gen. Stat. § 1A-1, Rule 11(b) sets forth the substance of such verification, stating,

[i]n any case in which verification of a pleading shall be required by these rules or by statute, it shall state in substance that the contents of the pleading verified are true to the knowledge of the person making the verification, except as to those matters stated on information and belief, and as to those matters he believes them to be true.

Correspondingly, N.C. Gen. Stat. § 10B-40(d) (2005)[1] sets forth a form of verification sufficient for acceptance by North Carolina courts, stating,

(d) A notarial certificate for an oath or affirmation taken by a notary is sufficient and shall be accepted in this State . . . if it includes all of the following:

(1) Identifies the state and county in which the oath or affirmation occurred;

(2) Names the principal who appeared in person before the notary unless the name of the principal otherwise is clear from the record itself.

---

1. N.C. Gen. Stat. §§ 10B-40(d)(1) and (3) were repealed by North Carolina Session Laws 2006-59, s. 18, which became effective 1 October 2006, approximately six months after DSS filed its petition for termination in this case.

**IN RE Dj.L., D.L., & S.L.**

[184 N.C. App. 76 (2007)]

(3) States that the notary has either (i) personal knowledge of the identity of the principal or (ii) satisfactory evidence of the principal's identity, indicating the nature of that satisfactory evidence;

(4) Indicates that the principal who appeared in person before the notary signed the record in question and certified to the notary under oath or by affirmation as to the truth of the matters stated in the record.

(5) States the date of the oath or affirmation.

(6) Contains the signature and seal or stamp of the notary who took the oath or affirmation.

(7) States the notary's commission expiration date.

Here, the verification page of the petition filed by DSS shows the following:

### VERIFICATION

The undersigned Petitioner, being duly sworn, says that the Petition hereon is true to his own knowledge, except as to those matters alleged on information and belief, and as to those matters, he believes it to be true.

Betty Hooper
Petitioner-Affiant

Sworn to and subscribed before me
this the 4th day of June, 2004.

Roma J. Hester
Notary Public

My Commission expires: 05-09-2005

The notary also stamped the document with her seal, which read "Roma J. Hester, Notary Public, Mecklenburg County, N.C." This verification complies with N.C. Gen. Stat. § 1A-1, Rule 11 and N.C. Gen. Stat. § 10B-40(d) in both form and substance. *Cf. In re A.J.H.R. & K.M.H.R.*, 184 N.C. App. —, — S.E.2d — (2007) (concluding that a purported verification did not satisfy N.C. Gen. Stat. § 7B-403 when the principal did not appear before the notary, sign the record in question, or certify the truth of the matters stated therein by oath or affirmation).

**IN RE Dj.L., D.L., & S.L.**

[184 N.C. App. 76 (2007)]

We emphasize that the facts *sub judice* are distinct from the facts of *In re T.R.P.*, a case in which the North Carolina Supreme Court recently vacated a custody review order after concluding that the trial court lacked subject matter jurisdiction to resolve the underlying juvenile petition. 360 N.C. 588, 636 S.E.2d 787. In *In re T.R.P.*, the North Carolina Supreme Court stated "the General Assembly's requirement of a verified petition is a reasonable method of assuring that our courts exercise their power only when an identifiable government actor 'vouches' for the validity of the allegations in such a freighted action." *Id.* at 592, 636 S.E.2d at 791. Because the juvenile petition alleging neglect in *In re T.R.P.* was "neither signed nor verified," the Court held that the trial court did not have subject matter jurisdiction to enter an adjudication and disposition order resolving that petition, or to enter a subsequent custody review order pursuant to N.C. Gen. Stat. § 7B-906. *Id.* at 589, 636 S.E.2d at 789. In *In re T.R.P.*, the Court used the phrase "neither signed nor verified" to explain that no one signed as "petitioner-affiant" on the verification page of the juvenile petition: there was no indication "that the principal who appeared in person before the notary signed the record in question and certified to the notary under oath or by affirmation as to the truth of the matters stated in the record." N.C. Gen. Stat. § 10B-40(d)(4); *see In re T.R.P.*, 173 N.C. App. 541, 546-47, 619 S.E.2d 525, 529 (2005), *aff'd*, 360 N.C. 588, 636 S.E.2d 787 (2006). We determine that *In re T.R.P.* does not control the case *sub judice* because, here, an identifiable government actor, and specifically an identifiable employee of the Youth and Family Services Division of the Mecklenburg County Department of Social Services, actually signed and verified the petition.

Applying N.C. Gen. Stat. §§ 108A-14(a)(11), (b), 7B-101(9), 7B-403(a), 1A-1, Rule 11(b), and 10B-40(d), we hold that the juvenile petition drawn and verified by Betty Hooper was sufficient to invoke the subject matter jurisdiction of the trial court. Accordingly, the adjudication order entered 30 August 2004, awarding custody of Dj.L., D.L., and S.L. to DSS, is not void. In that document, the trial court expressly ordered

3. The children shall remain in the legal custody of YFS [Youth and Family Services] . . . in foster care.

4. The child[ren]'s placement and care are the responsibility of YFS and YFS is to provide or arrange for the foster care or other placement of the child. DSS/YSF is granted the authority to obtain medical, educational, psychological, or psychiatric

treatment and provide other services as deemed appropriate by the agency.

Because DSS is a "county department of social services . . . to whom custody of the juvenile has been given by a court of competent jurisdiction," DSS had standing to file a petition for termination of respondent's parental rights under section 7B-1103(3).

This assignment of error is overruled.

## II. N.C. Gen. Stat. § 7B-1109 Time Limit

**[4]** Respondent argues that the trial court erred by failing to hold a termination hearing within ninety days of the date on which DSS filed its petition for termination. Because respondent has not shown that she was prejudiced by the identified delay, we overrule this assignment of error.

N.C. Gen. Stat. § 7B-1109(a) (2005) provides

[t]he hearing on the termination of parental rights shall be conducted by the court sitting without a jury and shall be held in the district at such time and place as the chief district court judge shall designate, but no later than 90 days from the filing of the petition or motion unless the judge pursuant to subsection (d) of this section orders that it be held at a later time.

Section 7B-1109(d) permits the trial court to continue a termination hearing for up to ninety days for "good cause shown," or beyond ninety days "in extraordinary circumstances when necessary for the proper administration of justice." When the trial court continues a termination hearing beyond ninety days, it "shall issue a written order stating the grounds for granting the continuance"; however, there is no requirement in N.C. Gen. Stat. § 7B-1109 that the trial court make written findings to support an initial ninety day continuance for "good cause."

Here, DSS filed its petition for termination of respondent's parental rights on 28 March 2006 and the trial court held the termination hearing on 26 September 2006. Although approximately six months passed between the date of filing and the date of hearing, there is no continuance order in the record and no indication that any party requested a continuance in this matter; therefore, for purposes of this appeal, we conclude that the trial court erred by calendaring the termination hearing outside the ninety day time limit set in N.C. Gen. Stat. § 7B-1109(a).

However, "time limitations in the Juvenile Code are not jurisdictional." *In re C.L.C.*, 171 N.C. App. 438, 443, 615 S.E.2d 704, 707 (2005), *aff'd per curiam*, 360 N.C. 475, 628 S.E.2d 760 (2006). Failure to comply with a time limitation in the Juvenile Code is not <u>reversible</u> error unless the appellant shows "prejudice resulting from the time delay." *Id.* Thus, to prevail on this assignment of error, an appellant "must appropriately articulate the prejudice arising from the delay." *Cf. In re S.N.H.*, 177 N.C. App. 82, 86, 627 S.E.2d 510, 513 (2006) (applying N.C. Gen. Stat. § 7B-1109(e) and explaining that the passage of more than thirty days between a termination hearing and the trial court's entry of a written termination order is not prejudicial *per se*). "The passage of time alone is not enough to show prejudice." *Id.*

Respondent argues that the delay in this case was an "extraordinary delay" that resulted in prejudice *per se*. We are not persuaded. The time between DSS's filing of the petition for termination and the termination hearing was less than six months, which is a delay that would have been authorized by N.C. Gen. Stat. § 1109(a) and (d) if the trial court had entered a continuance for "good cause shown." N.C. Gen. Stat. § 1109(a), (d) (setting a three month time limit for calendaring and permitting an additional three month continuance for "good cause shown"). In light of the statutory scheme, which affords a degree of flexibility to the trial court in calendaring, we conclude that a delay of less than six months between the filing of a termination petition and a termination hearing is not so "extraordinary" that it results in prejudice *per se*. Because respondent has not shown actual prejudice arising from the identified delay, this assignment of error is overruled.

### III. Ineffective Assistance of Counsel

Respondent argues that the trial court erred by entering an order terminating her parental rights because she was denied effective assistance of counsel at the termination hearing. We disagree.

Parents have a statutory " 'right to counsel in all proceedings dedicated to the termination of parental rights.' " *In re L.C., I.C., L.C.*, 181 N.C. App. 278, 282, 638 S.E.2d 638, 641 (2007) (quoting *In re Oghenekevebe*, 123 N.C. App. 434, 436, 473 S.E.2d 393, 396 (1996)), *disc. rev. denied*, 361 N.C. 354, —— S.E.2d —— (2007). *See also* N.C. Gen. Stat. §§ 7B-1101.1(a), 1109(b) (2005). This statutory right includes the right to effective assistance of counsel. *In re L.C., I.C., L.C.*, 181 N.C. App. at 282, 638 S.E.2d at 641; *In re Oghenekevebe*, 123 N.C. App. at 436, 473 S.E.2d at 396. Counsel's assistance, as guaranteed by N.C. Gen. Stat. §§ 7B-1101.1(a) and 1109(b), is ineffective

when (1) counsel's performance was deficient and (2) the "deficiency was so serious as to deprive the represented party of a fair hearing." *In re Oghenekevebe*, 123 N.C. App. at 436, 473 S.E.2d at 396. (considering an appellant's ineffective assistance of counsel claim pursuant to former N.C. Gen. Stat. § 7A-289.23 (1995), which has been repealed and recodified); *In re J.A.A.*, 175 N.C. App. 66, 74, 623 S.E.2d 45, 50 (2005).

[5] First, respondent argues that counsel's performance was deficient because counsel waived her right to a pre-trial hearing under N.C. Gen. Stat. § 7B-1108(b) (2005) by failing to file an answer to DSS's petition for termination. The purpose of a pre-trial hearing as defined by N.C. Gen. Stat. § 7B-1108(b) is "to determine the issues raised by the petition." This Court has previously determined that a respondent was not prejudiced by counsel's failure to request a pre-trial hearing in an action for termination of parental rights when the respondent was "on notice as to the issues" to be resolved. *Id.* Respondent does not argue that she was unaware of the issues raised in DSS's petition for termination; rather, respondent states generally that at a pre-trial hearing "witnesses and evidence would have been disclosed, motions made, and trial preparation enhanced." Such general averments are insufficient to establish prejudice resulting in an unfair hearing. *See In re B.P.*, 169 N.C. App. 728, 733, 612 S.E.2d 328, 332 (2005) (denying an ineffective assistance claim when the respondent "failed to specify what motions should have been made and what evidence could have been, but was not, presented before the trial court"). Therefore, assuming *arguendo* that counsel's performance was deficient in this respect, respondent has not shown that the alleged deficiency resulted in an unfair hearing.

[6] Second, respondent argues that counsel's performance was deficient because counsel waived the defense of lack of personal jurisdiction. In particular, respondent argues that the address at which process was hand-delivered was not her "usual place of abode" as required by N.C. Gen. Stat. § 1A-1, Rule 4(j)(a) (2005). The record reflects that process was delivered to respondent's grandmother's home.

We hold that counsel's waiver of the defense of defective service of process did not constitute deficient performance in this case. In so doing, we recognize that litigants often choose to waive the defense of defective service when they had actual notice of the action and when the inevitable and immediate response of the opposing party will be to re-serve the process. Again, respondent does not argue that

she lacked notice of the action or the issues to be resolved thereby. In fact, it is undisputed that at the time of the hearing respondent was living with her grandmother and that she had been living there for approximately one month. Moreover, respondent attended a permanency planning review hearing in this same matter on 9 August 2006, after DSS filed its petition for termination but before the termination hearing.

[7] Third, respondent argues that counsel's performance was deficient because counsel failed to make proper objections to testimony on the ground that it was hearsay, irrelevant, non-responsive, unfairly prejudicial or other evidentiary grounds; counsel failed to develop defenses to the grounds alleged for termination; and counsel did not subpoena witnesses, including witnesses to authenticate the results of respondent's drug screening and respondent's treatment workers. Assuming *arguendo* that counsel's performance was deficient in these respects, these deficiencies did not deprive respondent of a fair hearing.

This Court has previously determined that alleged deficiencies did not deprive the respondent of a fair hearing when the respondent's counsel "vigorously and zealously represented" her, was familiar "with her ability to aid in her own defense, as well as the idiosyncrasies of her personality," and "the record contain[ed] overwhelming evidence supporting termination," *In re J.A.A.*, 175 N.C. App. 66, 74, 623 S.E.2d 45, 50 (2005). After reviewing the record in its entirety, we are convinced that these criteria are met in the case *sub judice*.

Counsel's representation, while not perfect, was vigorous and zealous. Counsel represented respondent at every stage of this consolidated case, beginning with mediation proceedings held on 21 July 2004. As such, counsel was familiar with the substantive issues involved in the case as well as respondent's personality, which appears to have been uncooperative at times.

Most importantly, DSS presented overwhelming evidence to support at least one ground for termination of respondent's parental rights: respondent's failure to pay a reasonable portion of the cost of care for Dj.L., D.L., and S.L. for a continuous period of six months preceding DSS's filing of the petition, although respondent was physically and financially able to do so. N.C. Gen. Stat. § 7B-1111(3) (2005); *In re Shermer*, 156 N.C. App. 281, 285, 576 S.E.2d 403, 406 (2003) (explaining that the existence of a single statutory ground for termination is sufficient to support a termination order). The trial

**IN RE Dj.L., D.L., & S.L.**

[184 N.C. App. 76 (2007)]

court entered a child support order requiring respondent to pay $50.00 per month beginning on 29 August 2005; however, as of the termination hearing on 26 September 2006, respondent had not paid <u>any</u> amount toward the cost of care for her children. Respondent testified at the termination hearing that during the six to seven months preceding DSS's filing of its petition for termination, she worked full-time at Hardee's and she also worked at Wrennett's Helping Hands second-hand shop.[2] Based on this and other testimony, the trial court concluded that respondent "could have paid some amount greater than zero towards the cost of her children's care."

In light of the child support order, respondent's failure to pay any amount toward the cost of her children's care, and respondent's admission that she had been employed full-time, we conclude that counsel's alleged deficiencies did not result in an unfair termination hearing. It is difficult to see a defense on which respondent could have prevailed, and respondent cites no such theory on appeal.

For the reasons stated above, we conclude that trial counsel's waiver of the defense of lack of personal jurisdiction based on defective service of process did not constitute deficient performance. We further conclude that the remaining deficiencies alleged by respondent did not deprive her of a fair hearing. This assignment of error is overruled.

## IV. Conclusion

For the reasons stated above, we hold that DSS had standing to file a petition for termination of respondent's parental rights under section 7B-1103(3), respondent has failed to show actual prejudice resulting from an approximately six month delay between the date on which DSS filed its petition for termination and the termination hearing, and respondent did not receive ineffective assistance of counsel during the termination hearing. Accordingly, the order terminating respondent's parental rights to Dj.L., D.L., and S.L. entered in District Court, Mecklenburg County on 6 November 2006 by Judge Regan Miller is affirmed.

AFFIRMED.

Judges JACKSON and STEPHENS concur.

---

2. Respondent also testified that she held other full time jobs at Ross, Subway, Tally's, IHOP, and several temporary placement agencies during the period in which the children were removed from her home.