IN THE MATTER OF: J.T.F., S.L.F., Minor Children.
No. COA08-814
Court of Appeals of North Carolina
Filed December 16, 2008
This case not for publication
Lauren Vaughan, for Caldwell County Department of Social Services, Petitioner-Appellee.
Don Willey, for Respondent-Appellant Father.
Pamela Newell Williams, for Guardian ad Litem.
Shell Pierce, for Respondent-Mother.
ARROWOOD, Judge.
Respondent-Father appeals from the district court's order terminating his parental rights to his son, J.T.F, and his daughter, S.L.F. Respondent-Father does not challenge any of the trial court's findings of fact or conclusions of law on appeal. Rather, Respondent-Father contends that his trial counsel provided ineffective assistance of counsel. Alternatively, Respondent-Father in his brief moves this Court to remand this action to the trial court for an evidentiary hearing to determine whether he is entitled to relief from judgment pursuant to Rule 60(b)(1), (6) of the North Carolina Rules of Civil Procedure. After careful review, we affirm. On 26 July 2006, the Caldwell County Department of Social Services (DSS) filed a petition alleging that J.T.F. and S.L.F. were neglected and dependent juveniles. The petition alleged that J.T.F. and S.L.F. lived in an environment injurious to their welfare, based in part, on the following: (a) both parents had a history of substance abuse and had used illegal drugs in the presence of the juveniles; (b) the parents had a history of engaging in domestic violence; (c) Respondent-Father has a violent temper; (d) Respondent-Father assaulted the juveniles' maternal grandfather and the mother; (e) Respondent-Father's history of alcohol abuse had resulted in criminal charges and incarcerations; and, (f) there had been no efforts by Respondent-Father to participate in services recommended by DSS to ensure the safety of the juveniles. On 24 April 2007, both parents stipulated to the facts contained in the petition, and the juveniles were adjudicated dependent.
At the time of the petition, eight-year-old J.T.F. was residing with his paternal grandmother, and two-year-old S.L.F. was residing with a paternal cousin. In the disposition order, the trial court approved the juveniles' placements, but kept legal custody of the juveniles with the mother. Legal custody of the juveniles was later given to DSS. In a review order entered 26 September 2007, the trial court ceased reunification efforts and established a permanent plan of adoption.
On 21 November 2007, DSS filed a motion to terminate Respondent-Father's parental rights to J.T.F. and S.L.F. Themotion alleged the following grounds to terminate the parental rights of Respondent-Father: (1) neglect; (2) dependency; (3) willful failure to pay a reasonable portion of the cost of care for the juveniles; and (4) willful abandonment. The motion also sought to terminate the parental rights of the mother.
The trial court conducted a hearing in the matter on 13 February 2008 and 12 March 2008. At the close of adjudication evidence by DSS on 13 February 2008, mother and Respondent-Father moved to dismiss the termination motion. The trial court denied mother's motion in full, but allowed Respondent-Father's motion "insofar as it pertains to the allegations of Paragraph 12 regarding the willful failure to pay a reasonable portion of the cost of case of the minor children by the Respondent father" because the trial court found no evidence of willfulness on the part of Respondent-Father's failure to pay.
Between the two hearing dates, Respondent-Father sent a letter, dated 26 February 2008, to the Caldwell County Clerk of Court requesting that his trial counsel be dismissed and that he be appointed new trial counsel. Respondent-Father alleged the following:
[Counsel] told me on 2/13/08 at my last hearing that my mother did not want to care for my daughter, but she has denied that claim to me. She already has been providing care to my son, and my daughter is placed with another relative, and I believe my two children should be placed together if it pleases the court, and my mother is willing to accept the additional responsibility of raising her other grandchild until I am released from DOC. . . . At the hearing on 12 March 2008, trial counsel asked the court to address Respondent-Father's concerns before proceeding any further. When asked why he wanted a new attorney, Respondent-Father answered, "[c]ause I don't think he's doing a good job for me." The court questioned Respondent-Father further and the following exchange ensued:
The Court: All right. Do you have any specific position that you say would support that? It appears that I've allowed his motion to dismiss with regard to one claim brought against you and denied all of [the mother's] motions. So, that certainly indicates that things are  in that regard have gone well. . . .
Respondent-father: I just  I mean, when I was in prison and stuff and he didn't  in some of the cases I was  should've been at, some of the hearings and stuff I should've been at, I  he didn't even, you know, get me back here to be at it or, you know, nothing.
The Court: All right. Sir, is there anything in particular with regard to the evidence in this matter then that you think the Court should be aware of?
Respondent-father: No.
The court denied Respondent-Father's request to discharge his trial counsel, finding that counsel had been doing an adequate job. The trial court then took a recess for trial counsel to consult with Respondent-Father to determine whether Respondent-Father wished to put on any evidence.
In an order entered 9 April 2008, the trial court concluded that the following grounds existed to terminate Respondent-Father's parental rights to J.T.F. and S.L.F.: (1) the children were neglected juveniles as defined by N.C. Gen. Stat. § 7B-101(15); and(2) Respondent-Father was incapable of providing for the proper care and supervision of the children such that the children were dependent juveniles and he lacked an appropriate child care arrangement. The trial court also terminated the parental rights of the juveniles' mother. Only Respondent-Father appeals.
We turn first to Respondent-Father's claim that he was denied effective assistance of counsel. It is well-established that "[p]arents have a `right to counsel in all proceedings dedicated to the termination of parental rights.'" In re L.C., 181 N.C. App. 278, 282, 638 S.E.2d 638, 641 (quoting In re Oghenekevebe, 123 N.C. App. 434, 436, 473 S.E.2d 393, 396 (1996)), disc. review denied, 361 N.C. 354, 646 S.E.2d 114 (2007). This right is guaranteed by N.C. Gen. Stat. § 7B-1101.1(a) and -1109(b) (2007), and includes the right to effective assistance of counsel. Id. In order to prove an ineffective assistance of counsel claim, Respondent-Father must show that (1) counsel's performance was deficient and (2) the deficiency was "so serious as to deprive the represented party of a fair hearing." In re Oghenekevebe, 123 N.C. App. at 436, 473 S.E.2d at 396 (internal citations omitted).
Respondent-Father first argues that trial counsel was ineffective because he failed to file a response to DSS's motion to terminate parental rights and that Respondent-Father was substantially prejudiced by such failure. Respondent-Father is certainly correct in pointing out that trial counsel did not file a response to the motion to terminate parental rights. Nonetheless, even assuming arguendo that counsel's failure in this respect was deficient, Respondent-Father has not demonstrated that he was deprived of a fair hearing due to counsel's failure.
If a parent fails to file a written response within 30 days after the filing of the motion to terminate parental rights, the trial court may issue an order terminating the parental rights of that parent. N.C. Gen. Stat. § 7B-1107 (2007). However, the trial court is required to first conduct a hearing on the motion, and may terminate the parental rights of the parent only if one or more grounds of the statutory grounds exist. In re Tyner, 106 N.C. App. 480, 483-84, 417 S.E.2d 260, 262 (1992) (internal citation omitted); see also N.C. Gen. Stat. § 7B-1111(a) (2007). Therefore, "[t]he absence of an answer denying any of the material allegations of the petition . . . does not authorize the trial court to enter a `default type' order terminating the respondent's parental rights." Tyner, 106 N.C. App. at 483, 417 S.E.2d at 261. Based on this statutory framework and our review of the hearing transcript, we conclude that Respondent-Father received a fair hearing despite counsel's failure to respond to the motion to terminate. Accordingly, Respondent-Father cannot demonstrate that counsel was ineffective on this ground.
Respondent-Father next argues that counsel was ineffective and that he was prejudiced due to trial counsel's alleged failure to adequately communicate with Respondent-Father. After reviewing the record, we also conclude that counsel's performance was not deficient. Trial counsel objected to evidence at the hearing, cross-examined witnesses, had one of the grounds for termination dismissed, and moved for additional dismissals. After Respondent-Father requested new counsel, the trial court found counsel's performance to be satisfactory. Moreover, trial counsel was given an opportunity to consult with Respondent-Father on 12 March 2008 before putting on evidence in his defense. Finally, the record reveals that any lack of communication between trial counsel and Respondent-Father was not necessarily the fault of trial counsel. On 20 December 2007, trial counsel filed a motion to continue the hearing "for the reason that Counsel has been unable to contact Respondent Father due to movement within the North Carolina Department of Corrections." Based on the foregoing, we do not find that counsel's performance fell below an objective standard of reasonableness. See In re J.A.A., 175 N.C. App. 66, 74, 623 S.E.2d 45, 50 (2005).
Even assuming arguendo that counsel's performance was deficient, Respondent-Father has nevertheless failed to demonstrate that he was deprived a fair hearing due to any allegedly deficient performance. This Court has previously held that a respondent must demonstrate that he suffered prejudice in order to show that he was denied a fair hearing. See L.C., 181 N.C. App. at 283, 638 S.E.2d at 641 (concluding that respondent could not prove he was denied a fair hearing where he was unable to demonstrate prejudice due to counsel's late arrival to his termination hearing). After reviewing the record, we conclude that Respondent-Father has failed to prove that he suffered any prejudice. Indeed, Respondent-Father has not challenged any findings of fact in his brief. Therefore, the findings of fact are deemed conclusive on appeal. In re Humphrey, 156 N.C. App. 533, 540, 577 S.E.2d 421, 426 (2003). The record contains evidence to support termination, and Respondent-Father has not identified how further communication with trial counsel would have provided him with a meaningful defense or otherwise impacted his case. See In re Dj.L., 184 N.C. App. 76, 85, 646 S.E.2d 134, 140 (2007) (finding that respondent was not deprived of a fair hearing where DSS presented overwhelming evidence of grounds for termination and respondent cited no theory on which respondent could have prevailed);L.C., 181 N.C. App. at 283, 638 S.E.2d at 642 (finding no prejudice where respondent was unable to identify action counsel should have taken to prevent the outcome of the case). Accordingly, we conclude that counsel's alleged deficiencies did not result in an unfair termination hearing. This assignment of error is overruled.
In his second argument, Respondent-Father alternatively moves this Court to remand the action to the trial court for an evidentiary hearing to determine whether he is entitled to relief from judgment pursuant to N.C.R. Civ. P. 60(b). Rule 60(b) allows a court to "relieve a party or his legal representative from a final judgment, order, or proceeding for [specified] reasons[.]" Respondent-Father contends that he should be relieved from judgment on the following grounds: (1) "[m]istake, inadvertence, surprise, or excusable neglect," or (2) "[a]ny other reason justifying relief from the operation of judgment." N.C.R. Civ. P. 60(b)(1), (6). We initially note that, while an appellate court may consider a Rule 60(b) motion, such motions are not looked upon with favor in the appellate division. See Swygert v. Swygert, 46 N.C. App. 173, 181, 264 S.E.2d 902, 907 (1980);Bell v. Martin, 43 N.C. App 134, 142, 258 S.E.2d 403, 409 (1979), rev'd on other grounds, 299 N.C. 715, 264 S.E.2d 101 (1980). The preferred procedure is to file the Rule 60(b) motion in the trial court, for "the trial court retains limited jurisdiction, after an appeal has been taken, to hear and consider a Rule 60(b) motion for the purpose of indicating what action it would be inclined to take on such motion if it had jurisdiction to rule on the motion." Bell, 43 N.C. App. at 140, 258 S.E.2d at 408; see also Hall v. Cohen, 177 N.C. App. 456, 458, 628 S.E.2d 469, 471 (2006) (noting the Court's approval of this procedure). This procedure is preferred because it "allows the trial court to rule in the first instance on the Rule 60(b) motion and permits the appellate court to review the trial court's decision on such motion at the same time it considers other assignments of error." Bell, 43 N.C. App. at 142, 258 S.E.2d at 409. Therefore, Respondent-Father's motion would have been more properly made in the trial court, and we decline to address it.
Respondent-Father has failed to follow a second procedural requirement. He has included his motion for relief from judgment in his brief, not in a separate motion filed pursuant to N.C.R. App. P. 37(a). It is well-established that "[m]otions to an appellate court may not be made in a brief but must be made in accordance with N.C.R. App. P. 37." Horton v. New South Ins. Co.,122 N.C. App. 265, 268, 468 S.E.2d 856, 858 (1996) (citing Morris v. Morris, 92 N.C. App. 359, 361, 374 S.E.2d 441, 442 (1988)). Therefore, we decline to address Respondent-Father's motion because it is not properly before this Court. Id.
Affirmed.
Judges HUNTER and GEER concur.
Report per Rule 30(e).