**FANSLER v. HONEYCUTT**

[221 N.C. App. 226 (2012)]

KENNY RAY FANSLER and CASSANDRA M. FANSLER, Plaintiffs v. CHARLES LEONARD HONEYCUTT, Defendant

No. COA11-1451

(Filed 5 June 2012)

**Jurisdiction—subject matter—stalking—complaints not verified**

The trial court lacked subject matter jurisdiction over a stalking case where there was no indication that either of plaintiffs' complaints had been properly verified. The trial court's orders requiring defendant to refrain from stalking and harassing plaintiffs were vacated, and both cases were dismissed.

Appeal by defendant from orders entered 15 August 2011 by Judge Mary F. Covington in Davidson County District Court. Heard in the Court of Appeals 25 April 2012.

*No brief for plaintiffs-appellees.*

*Bryan Gates for defendant-appellant.*

ERVIN, Judge.

Defendant Charles Leonard Honeycutt appeals from orders requiring him to refrain from stalking and harassing Plaintiffs Kenny Ray Fansler and Cassandra M. Fansler. On appeal, Defendant contends that (1) the trial court's conclusions that Defendant was stalking the Plaintiffs lacked adequate evidentiary support; (2) the trial court's orders failed to contain sufficiently specific findings of fact and separately stated conclusions of law as required by N.C. Gen. Stat. § 1A-1, Rule 52; and (3) Plaintiffs' complaints were not adequately verified as required by N.C. Gen. Stat. § 50C-2. After careful consideration of Defendant's challenges to the trial court's orders in light of the record and the applicable law, we conclude that the trial court's orders should be vacated and Plaintiffs' actions dismissed.

## I. Factual Background

On 9 August 2011, Plaintiffs filed complaints alleging that Defendant had "stalked" and "harass[ed]" them and requesting that the trial court order him to refrain from engaging in similar conduct in the future. On the same date, Judge Jimmy L. Myers issued temporary *ex parte* orders providing, among other things, that Defendant cease stalking and threatening Plaintiffs.

The issues raised by Plaintiffs' complaints came on for hearing before the trial court at the 15 August 2011 term of Davidson County District Court. At the hearing, Mr. Fansler testified that Defendant, his former brother-in-law, had physically attacked him and his current wife, Cassandra Fansler. In addition, Mr. Fansler stated that, in the weeks preceding the filing of Plaintiffs' complaints, Defendant had "follow[ed] [him] around[,]" videotaped. him while he was working, and been involved in an altercation with Mrs. Fansler at the couples' home. As a result of Defendant's actions, Mr. Fansler "felt very threatened."

Mrs. Fansler testified that Defendant and his family had "continually stalked [her] and [her] family" ever since the beginning of her relationship with Mr. Fansler. On an occasion when the physical custody of the children that Mr. Fansler had had with Defendant's sister was being transferred, Defendant assaulted Mr. Fansler with a pocket knife and then "attacked [Mrs. Fansler] from behind, . . . banged [her] head on the pavement," and threatened her with the pocket knife. Mrs. Fansler also asserted that Defendant had, on a number of occasions, "swerve[d]" his vehicle in an apparent attempt to feign hitting her while she was driving and jogging near the home that she and Mr. Fansler shared and that Defendant would materialize while she and Mr. Fansler were present in various shops and businesses.

Defendant, on the other hand, testified that he merely put out his arms and got between Plaintiffs and one of the children at the time the children were being transferred and that he had videotaped Mr. Fansler at work because Mr. Fansler had failed to pay child support to Defendant's sister on the grounds that he did not "have any work and [could not] pay her." Finally, Defendant denied Plaintiffs' allegations that he had followed them to various shops and business, attempted to hit Mrs. Fansler with his vehicle, or threatened Mrs. Fansler with a knife.

On 15 August 2011, the trial court issued orders requiring that Defendant (1) refrain from visiting, assaulting, molesting, or otherwise interfering with Mrs. Fansler; (2) cease stalking and harassing Plaintiffs; (3) refrain from contacting Plaintiffs by telephone, written communication or electronic means; and (4) refrain from entering or remaining at Plaintiffs' residence or places of employment and at the home of Mr. Fansler's ex-wife, which was located near the Plaintiffs' residence. With respect to the claim advanced by Mr. Fansler, the trial court determined that "[D]efendant ha[d] become overly involved in his sister's custody . . . case [which rose] to the level of stalking, causing fear to [Mr. Fansler]" and that Defendant was "consumed [with

Mr. Fansler's] new life." With respect to the claim advanced by Mrs. Fansler, the trial court determined that "[D]efendant [had] put [Mrs. Fansler] in the hospital [and Defendant] ha[d] continued to follow her and watch her at her residence." Defendant noted an appeal to this Court from the trial court's orders.

## II. Legal Analysis

In his brief, Defendant contends that (1) the trial court's conclusion that Defendant had been stalking Plaintiffs lacks adequate evidentiary support and that (2) the trial court's orders lack sufficiently specific findings of fact and separately stated conclusions of law as required by N.C. Gen. Stat. § 1A-1, Rule 52. We need not, however, address these components of Defendant's challenge to the trial court's orders given that Plaintiffs' complaints were not properly verified as required by N.C. Gen. Stat. § 50C-2.

According to N.C. Gen. Stat. § 50C-2:

> (a)  An action is commenced under this Chapter by filing a *verified complaint* for a civil no-contact order in district court or by filing a motion in any existing civil action, by any of the following:
>
> (1)  A person who is a victim of unlawful conduct that occurs in this State.
>
> (2)  A competent adult who resides in this State on behalf of a minor child or an incompetent adult who is a victim of unlawful conduct that occurs in this State.

(emphasis added). "Except when *otherwise specifically provided by rule or statute*, pleadings need not be verified or accompanied by affidavit." N.C. Gen. Stat. § 1A-1, Rule 11(a) (emphasis added). If an action is statutory in nature, "the requirement that pleadings be signed and verified 'is not a matter of form, but substance, and a defect therein is jurisdictional,' " leaving a trial judge confronted with an unverified pleading devoid of subject matter jurisdiction. *In re T.R.P.*, 360 N.C. 588, 590, 636 S.E.2d 787, 790 (2006) (quoting *Martin v. Martin*, 130 N.C. 27, 28, 40 S.E. 822, 822 (1902)). Put another way, "where it is required by statute that the petition be signed and verified, these essential requisites must be complied with before the petition can be used for legal purposes," since non-compliance renders the petition "incomplete and non[-]operative." *In re Green*, 67 N.C. App. 501, 503, 313 S.E.2d 193, 194-95 (1984) (vacating a trial court's

orders for lack of subject matter jurisdiction given that the juvenile petition at issue in that case had not been signed and verified as required by the controlling statutory provisions). As a result, an unverified complaint does not suffice to afford a trial court jurisdiction over a proceeding ostensibly initiated pursuant to N.C. Gen. Stat. § 50C-2.

Although N.C. Gen. Stat. § 50C-2 requires that a complaint seeking entry of a no-contact order be verified, the relevant statutory language does not delineate the components of a proper verification. For that reason, we look to the relevant provisions of the North Carolina Rules of Civil Procedure, particularly N.C. Gen. Stat. § 1A-1, Rule 11(b), for guidance in determining whether Plaintiffs' complaints were properly verified. *See In re S.D.W. & H.E.W.*, 187 N.C. App. 416, 422, 653 S.E.2d 429, 432 (2007) (recognizing that the extent to which a petition for termination of parental rights had been properly verified should be decided based on an analysis of the applicable provisions of the North Carolina Rules of Civil Procedure given that the applicable statutory provisions requiring the filing of a verified petition did not specify the exact manner in which the petition should be verified).

> [I]f a rule or statute requires that a pleading be verified, [N.C. Gen. Stat. § 1A-1,] Rule 11(b) requires that such a pleading "shall state in substance that the contents of the pleading verified are true to the knowledge of the person making the verification, except as to those matters stated on information and belief, and as to those matters he believes them to be true" and requires that such a verification "shall be by affidavit of the party."

*State ex rel. Johnson v. Eason*, 198 N.C. App. 138, 141, 679 S.E.2d 151, 153 (2009) (quoting N.C. Gen. Stat. § 1A-1, Rule 11(b)). As a result, in the event that a pleading is statutorily required to be verified, that pleading "must be sworn to before a notary public or other officer of the court authorized to administer oaths." 1 G. Gray Wilson, *North Carolina Civil Procedure* § 11-7, at 196 (2d ed. 1995). "Any officer competent to take the acknowledgment of deeds, and any judge or clerk of the General Court of Justice, notary public, in or out of the State, or magistrate, is competent to take affidavits for the verification of pleadings, in any court or county in the State, and for general purposes." N.C. Gen. Stat. § 1-148.

Form No. AOC-CV-520, which is available for use in connection with the filing of a complaint seeking the entry of a no-contact order,

contains a verification section which provides for the complainant to sign his or her name and to swear that "the matters and things alleged in the Complaint and Motion are true[.]" The verification section of Form AOC-CV-520 contains a subsection in which an officer of the court authorized to administer oaths signs the complaint and indicates that the complainant's verification had been "sworn/affirmed and subscribed to" before that officer. The subsection in question also contains boxes labeled "Deputy CSC," "Assistant CSC," "Clerk of Superior Court," "Designated Magistrate," "District Court Judge," and "Notary," which the officer or notary before whom the verification is executed should check in order to establish that he or she has the authority to administer oaths.

A careful examination of the record in this case indicates that neither complaint was properly verified. Although both complaints were prepared using Form AOC-CV-520, the record contains no indication that either complaint had been verified before an individual authorized to administer oaths. The verification section of Mr. Fansler's complaint contains a date, Mr. Fansler's signature, and a signature in the block intended for the signature of the person before whom Mr. Fansler's verification had been executed. However, none of the boxes in which the title of the officer of the court or notary public before whom Mr. Fansler verified his complaint have been checked, a fact which precludes us from determining that Mr. Fansler's verification had been executed before an individual authorized to administer an oath. Although the verification section of Mrs. Fansler's complaint contains the date and Mrs. Fansler's signature, the signature area and the boxes in which the name and title of the officer or notary before whom Mrs. Fansler verified the complaint should be delineated are completely blank. As a result, we are unable to determine if either of Plaintiffs' complaints had been verified before "a notary public or other officer of the court authorized to administer oaths" as required by N.C. Gen. Stat. § 50C-2 and N.C. Gen. Stat. § 1A-1, Rule 11. 1 G. Gray Wilson, *North Carolina Civil Procedure* § 11-7, at 196 (2d ed. 1995). Thus, given the absence of any indication that either of Plaintiffs' complaints had been properly verified, we hold that the trial court never obtained jurisdiction over the subject matter of these cases, that the trial court's orders should be vacated, and that both cases must be dismissed.

VACATED AND DIMISSED.

Judges ROBERT C. HUNTER and STROUD concur.