An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-913

NORTH CAROLINA COURT OF APPEALS

Filed: 18 February 2014

IN THE MATTER OF:

D.F.S. and J.I.M.,                    Macon County
                                      Nos. 12 JA 1-2

Appeal by respondent mother from order entered 21 December 2012 by Judge Donna F. Forga in Macon County District Court. Heard in the Court of Appeals 27 January 2014.

> *Elizabeth Myrick Boone for petitioner-appellee Macon County Department of Social Services.*

> *Ewing Law Firm, PC, by Robert W. Ewing for respondent-appellant mother.*

> *Ellis & Winters, LLP, by Lauren A. Miller, for guardian ad litem.*

STEELMAN, Judge.

Where the juvenile petition is verified before an officer authorized to administer oaths, and a person signs as an authorized representative of the DSS director and checks the appropriate box on the AOC form so indicating, the petition properly confers jurisdiction upon the trial court. The

uncontested findings of fact support the trial court's conclusion that reunification efforts with mother should be ceased. Mother has not properly petitioned for a writ of *certiorari* to review the visitation provisions of the order.

## I. Factual and Procedural Background

V.M. (mother) is the mother of the minor children D.F.S. and J.I.M., born in 1997 and 1999. On 18 January 2012 the Macon County Department of Social Services (DSS) (petitioner) filed petitions alleging that the juveniles were neglected and dependent. The petitions asserted that mother had choked D.F.S and given her a black eye, and had told J.I.M. to lie to DSS about the cause of D.F.S's injuries; that J.I.M. had also been subjected to inappropriate discipline; that mother behaved erratically and had twice been subject to commitment proceedings; and that she had admitted using illegal drugs and had tested positive for the presence of marijuana, opiates, and methamphetamine. On the same day, petitioner obtained nonsecure custody orders placing the children in petitioner's custody.

A hearing was conducted on 9 April 2012, and on 11 May 2012 District Court Judge Roy Wijewickrama entered an order adjudicating the juveniles to be neglected. In its disposition order, the court continued the juveniles' custody with DSS, directed that visitation should be supervised, and ordered

mother to maintain weekly contact with DSS, keep DSS informed of her address, telephone number, and employment, complete anger management, substance abuse, and parent education programs, remain under the care of a mental health provider, provide DSS with a list of her medications, remain drug free and submit to drug screens by DSS, provide DSS with proof of housing and obtain a stable source of income, attend family counseling, and fully cooperate with DSS and child support enforcement authorities.

The matter came on for a review and permanency planning hearing on 6 December 2012. In an order entered 21 December 2012, the trial court relieved DSS of further efforts towards reunification and changed the permanent plan for the juveniles to guardianship with a court-approved caretaker or APPLA ("another planned permanent living arrangement").

Mother appeals.

## II. Jurisdiction

In her first argument, mother contends that the order relieving the Macon County DSS from further efforts to achieve reunification is invalid, because the trial court lacked subject matter jurisdiction over the proceedings in that "the underlying juvenile petitions were not signed by the director or an

authorized representative of the Macon County Department of Social Services." This argument is without merit.

"This Court recognizes its duty to insure subject matter jurisdiction exists prior to considering an appeal." *In re E.T.S.*, 175 N.C. App. 32, 35, 623 S.E.2d 300, 302 (2005) (citing *In re N.R.M., T.F.M.*, 165 N.C. App. 294, 296-98, 598 S.E.2d 147, 148-49 (2004)). "A trial court's subject matter jurisdiction over all stages of a juvenile case is established when the action is initiated with the filing of a properly verified petition. . . . [S]ubject matter jurisdiction over juvenile actions is contingent upon verification of the petition." *In re T.R.P.*, 360 N.C. 588, 593-94, 636 S.E.2d 787, 792 (2006) (citations omitted). Upon review of the petitions filed in this case, we conclude that they were properly verified.

"N.C. Gen. Stat. § 7B-403(a) (2005) provides that a juvenile petition alleging dependency, abuse, or neglect 'shall be drawn by the director, verified before an official authorized to administer oaths, and filed by the clerk, recording the date of filing.'" *In re Dj.L.*, *D.L. & S.L.*, 184 N.C. App. 76, 79, 646 S.E.2d 134, 137 (2007). N.C. Gen. Stat. § 7B-101 (10) defines "director" as the "director of the county department of social services in the county in which the juvenile resides or is found, or the director's representative as authorized in G.S.

108A-14." N.C. Gen. Stat. § 108A-14(b) (2013) authorizes the director of a county department of social services to "delegate to one or more members of his staff the authority to act as his representative." Accordingly, a DSS director may "delegate to one or more members of his staff the authority to act as his representative" to file an abuse, neglect, and dependency petition. *Dj.L.*, 184 N.C. App. at 79, 646 S.E.2d at 137 (internal citations and quotation marks omitted).

N.C. Gen. Stat. § 1A-1, Rule 11(b) provides that "[i]n any case in which verification of a pleading shall be required by these rules or by statute, it shall state in substance that the contents of the pleading verified are true to the knowledge of the person making the verification, except as to those matters stated on information and belief, and as to those matters he believes them to be true. Such verification shall be by affidavit of the party[.]" "[If] a pleading is statutorily required to be verified, that pleading 'must be sworn to before a notary public or other officer of the court authorized to administer oaths.' 'Any officer competent to take the acknowledgment of deeds, and any judge or clerk of the General Court of Justice, notary public, in or out of the State, or magistrate, is competent to take affidavits for the verification of pleadings, in any court or county in the State, and for

general purposes.'" *Fansler v. Honeycutt*, __ N.C. App. __, __, 728 S.E.2d 6, 8 (2012) (quoting 1 G. Gray Wilson, North Carolina Civil Procedure § 11-7, at 196 (2d ed. 1995), and N.C. Gen. Stat. § 1-148).

In this case, petitioner used AOC Form J-130 for preparation of the juvenile petitions. This form contains a verification section which provides for the petitioner to sign his or her name and to swear that

> Being first duly sworn, I say that I have read the allegations in the petition and that the same are true to my own knowledge, except as to those matters alleged upon information and belief, and as to those, I believe them to be true.

Immediately below this averment is the dated signature of a Deputy Clerk of Superior Court for Macon County, an official who is authorized to administer oaths for purposes of verification, and the signature of Lisa Hilliard, who signed the petition "Lisa Hilliard: Jane C. Kimsey" and checked the box marked "Authorized Representative of Director." We conclude that petitioner complied in every respect with the statutory requirements for verification.

On 18 October 2013, petitioner filed a motion asking this Court to take judicial notice of the status of Ms. Kimsey as DSS director and Ms. Hilliard as her authorized representative. We conclude, however, that it is not necessary for us to take

judicial notice of these facts. A signed verification, witnessed by an authorized official, is valid unless evidence in the record impeaches the verification. *Skinner v. Skinner*, 28 N.C. App. 412, 414, 222 S.E.2d 258, 260-61, *disc. review denied*, 289 N.C. 726, 224 S.E.2d 674 (1976). Mother has not identified any evidence that might impeach the validity of the verification. For example, she does not dispute that Ms. Kimsey was the DSS director or that Ms. Hilliard was her duly authorized representative. We hold that where a petition is (1) verified before an officer who is entitled to administer oaths and who checks one of the boxes indicating the source of his or her authority and (2) is signed by an individual as the authorized representative of the director, who checks the box for "Authorized Representative" that (3) the petition is properly verified. We conclude that the petitions conferred subject matter jurisdiction upon the trial court and that mother is not entitled to relief on this basis.

### III. Cessation of Reunification

In her second argument, mother contends that the trial court abused its discretion by relieving DSS of further efforts to reunify the family, given that mother had made some progress in complying with her case plan. We disagree.

### A. Standard of Review

"'This Court reviews an order that ceases reunification efforts to determine whether the trial court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the trial court's conclusions, and whether the trial court abused its discretion with respect to disposition.' Findings of fact which are not challenged on appeal as lacking adequate evidentiary support are deemed supported by competent evidence and are binding for purposes of appellate review." *In re D.E.G.*, __ N.C. App. __, __, 747 S.E.2d 280, 283 (2013) (quoting *In re C.M.*, 183 N.C. App. 207, 213, 644 S.E.2d 588, 594 (2007) (internal citation omitted), and citing *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).

## B. Analysis

A court may direct DSS to cease further reasonable efforts toward reunification if it finds "[s]uch efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time[.]" N.C. Gen. Stat. § 7B-507(b)(1) (2013). In this case, the trial court made sufficient findings of fact, supported by competent evidence, to support its finding that further efforts toward reunification would be futile. The trial court found, in relevant part, that:

. . .

29. That pursuant to N.C. General Statutes § 7B-507, DSS has made reasonable efforts to . . . reunify this family[.] . . . Some of these reasonable efforts include: providing Medicaid, providing food stamps . . . meeting with the Respondent mother on numerous occasions prior to the filing of the juvenile petitions in attempts to engage the Respondent mother in a case plan for the family, facilitating visitations, making referrals for the minor children for mental health counseling, making referrals to the Respondent mother . . . for mental health services and treatment, developing a case plan with the Respondent mother, monitoring visitations, linking the Respondent mother with services regarding counseling, parenting classes, therapy, drug testing, and case management[.]

30. . . . That there are no appropriate relatives available for placement of the minor children at this time.

31. That return of the minor children to their home would be contrary to the minor children's welfare, safety, and best interest at this time.

. . .

35. That the minor children have expressed to the social worker that they are afraid to return to the home of the Respondent mother.

. . .

43. That the Respondent mother did sign a case plan with DSS on April 13, 2012. She does maintain weekly contact with DSS and does maintain face to face monthly contact with DSS. She keeps DSS informed of her contact information and status. She has attended parenting classes and sees a

counselor for anger management, individual counseling, and substance abuse. The Respondent mother currently lives in a one bedroom apartment after being evicted from her previous home by summary ejectment in July 2012. In that matter, Respondent mother did appear in Court and did not dispute the details of the ejectment.

44. That on October 8, 2012, DSS social worker Stacey Jenkins left the Respondent mother a voice mail requesting she submit to a random drug screen; later that day the Respondent mother left social worker Jenkins a voice mail indicating that she was available later that day; because of the time frame before which the Respondent mother made herself available for the requested screen, DSS deemed the Respondent mother did not appear for the screen. The Respondent mother is not required to take random drug screens for her substance abuse counseling.

45. That despite her appointments/sessions with Mr. Ross, the Respondent mother has failed to demonstrate an ability to parent the children and has failed to prove to the satisfaction of the Court that she has addressed her anger management issues.

. . .

48. That the Respondent mother has worked with her counselor in efforts to increase her ability to deal with the minor children but her contact with the children has not demonstrated that ability.

49. That the Respondent mother has had 14 appointments with Appalachian Counseling; ten were completed, two were rescheduled by Appalachian, and two were cancelled by the Respondent mother. That there needs to be one more session to complete anger management, but the substance abuse and

parenting sessions are ongoing.

50. That the issue of discipline has been a small part of the Respondent mother's counseling.

51. That the Respondent mother has had supervised visitations with the minor children[.] . . . Visitations were ended with [D.F.S.] on September 24, 2012, on the recommendations of Ms. Holmes, [D.F.S.'s] therapist. Prior to that time, there were a number of visits that ended with [D.F.S.] due to the Respondent mother and [D.F.S.] regarding typical teenage issues such as attire, cheerleading, school, etc., but the general underlying problem between [D.F.S.] and the Respondent mother is a failure to communicate. The Respondent mother's counseling has been unsuccessful in trying to address that issue. The Respondent mother lacks the ability to effectively deal with the typical teen age problems of the minor children.

52. That visitations between [J.I.M.] and the Respondent mother have been appropriate for the most part; that they get along well and can discuss issues effectively but that the discussion of the progress of this case has caused anxiety on [J.I.M.'s] part.

53. That the Respondent mother is more short and more critical with [D.F.S.] than she is with [J.I.M.]. On September 17, 2012, the Respondent mother told [D.F.S.] that she didn't have to come home.

54. That the Respondent mother loves both children deeply and both children love their mother. That while they desire to be with their mother, the minor children do not feel safe being with their mother at this time. Both children expressed a desire to have a relationship with their mother but do not want to live with their mother. Both

children do not believe that their mother has the ability to effectively parent them at this time.

55. That a difficulty in communication between DSS and the Respondent mother has created a situation where the minor child [D.F.S.] attempts to communicate information with the Respondent mother that increases the anxiety in their relationship.

56. That the family therapy visits that were previously ordered by the Court between the minor children and the Respondent mother were stopped by the therapist between the Respondent mother and [J.I.M.] despite the Court not specifically allowing those sessions to stop. The therapists recommendations regarding family therapy in the prior Orders referred to [D.F.S.].

57. That while the minor children love their mother, neither feels it is appropriate for them to go home at this time.

58. That the permanent plan of reunification is no longer an appropriate plan for the minor children.

59. That the minor children continue to require more adequate care than the Respondent parents can provide.

60. That it is not possible for the minor children to be returned to their own home at this time and it is not in their best interest to do so at this time.

On appeal, mother directs our attention to evidence that might have supported different findings of fact, but challenges the evidentiary support for only two of the trial court's findings, Nos. 48 and 51. As discussed above, unchallenged findings are

binding on appeal. We conclude that the trial court's unchallenged findings of fact support its conclusion that further efforts at reunification would be futile. The trial court's findings of fact describe a situation in which respondent made some efforts toward completing components of her case plan, but was unable to demonstrate progress in adequately communicating with or caring for the juveniles. "'An abuse of discretion occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision.'" *D.E.G.*, __ N.C. App. at __ 747 S.E.2d at 283 (quoting *In re Robinson*, 151 N.C. App. 733, 737, 567 S.E.2d 227, 229 (2002) (internal quotations omitted). Given the trial court's extensive findings describing respondent's lack of progress, we cannot say that the court's ruling was not the result of a reasoned decision, and hold that the trial court did not abuse its discretion.

## IV. Visitation

Finally, in a footnote in her brief, respondent requests that we treat her brief as a petition for writ of *certiorari* in order to permit review of her visitation argument. Respondent's attempt to request *certiorari* through a footnote, however, does not comply with the requirements of N.C.R. App. P. 21(c), and she has not made any argument that her request for review falls

within N.C.R. App. P. 21(a). Therefore, we decline to exercise our discretion to allow respondent's purported petition or to use N.C.R. App. P. 2 to suspend the requirements of Rule 21 in order to expand the scope of appellate review. *State v. McCoy*, 171 N.C. App. 636, 639, 615 S.E.2d 319, 321, *appeal dismissed*, 360 N.C. 73, 622 S.E.2d 626 (2005).

AFFIRMED.

Judges HUNTER, Robert C., and BRYANT concur.

Report per Rule 30(e).