***********
Upon review of the competent evidence of record, with reference to the errors to be addressed on remand from the North Carolina Court of Appeals, the Full Commission enters the following Decision and Order.
 ***********
In accordance with the directives of the North Carolina Court of Appeals and based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. This matter came before the Industrial Commission pursuant to plaintiff's affidavit filed with the Commission on July 2, 2003.
2. Plaintiff and defendant, the North Carolina Department of Environmental and Natural Resources (NCDENR) are subject to and bound by the provisions of the North Carolina Torts Claims Act.
3. On July 27, 1999, plaintiff entered into an offer to purchase and contract for Lot No. 871, Hattaway Circle, located in Montgomery County, North Carolina. One of the conditions precedent to plaintiff purchasing Lot 871 was that the lot perk for a three-bedroom residence.
4. On July 30, 1999, after confirming that the soils then present on Lot 871 were suitable for a septic sytem, David Ezzell, an agent of the Montgomery County Health Department ("Health Department") and NCDENR issued Improvement Permit No. 99291, authorizing the construction of a three-bedroom residence on Lot 871. *Page 3 
5. In reliance upon the permit, plaintiff purchased Lot 871 for a purchase price of $118,000.00.
6. Thereafter, plaintiff built a boat dock and related amenities at the waterfront of Lot 871, for a total cost of $29,023.94.
7. Approximately two years later, plaintiff determined that he could make better use of Lot 871 by moving the driveway from the left-hand portion of the lot to the right-hand portion of the lot, and he approached the Health Department with those proposed changes. The Health Department informed plaintiff that he needed to resubmit an application for a permit identifying the new proposed location of the driveway. Plaintiff complied with that request and resubmitted an application for a new permit.
8. On September 5, 2002, John K. Fowlkes, then acting environmental health coordinator for the Health Department, notified plaintiff that Lot 871 did not pass the perk test. Mr. Fowlkes delivered a written notice of revocation dated September 5, 2002, notifying plaintiff of his findings and conclusions that the property was unsuitable for a ground absorption sewage system, and further informing plaintiff that Permit No. 99291, issued on July 30, 1999, was being revoked.
9. The pre-trial agreement entered into the record by the Deputy Commissioner included the following stipulation of the parties:
 Defendants . . . stipulate that the Montgomery County Health Department's Environmental Health Section improperly issued Permit No. 99291 and that the revocation of the improperly issued permit has caused damage to Claimant, Kerry A. Watts.
10. Therefore, prior to the hearing before the Deputy Commissioner, defendant admitted that they were negligent in issuing Permit No. 99291. *Page 4 
11. Defendant informed plaintiff that he had the right to request a retest of the property. Pursuant to that notification, plaintiff requested that the property be retested to determine its suitability for a ground absorption sewage system.
12. As part of the retest, NCDENR sent David B. McCloy, Ph.D., R.S., to inspect and test Lot 871 to determine whether the soils on Lot 871 were suitable for a ground absorption sewage system.
13. On July 31, 2002, Mr. McCloy delivered a letter to Jon Fowlkes, which stated that he agreed with Fowlkes' conclusion that Permit No. 99291 issued for Lot No. 871 should be revoked. In his July 31, 2002, letter to Mr. Fowlkes, Mr. McCloy set out three alternatives that would allow plaintiff to utilize his property for its intended purpose of constructing a three-bedroom residence, which were:
 a. Plaintiff could purchase another adjoining parcel of real property with suitable or provisionally suitable soil on which to place the ground absorption sewage treatment and disposal system. Plaintiff could install a sufficient system which would allow him to pump the effluent offsite from Lot 871 to the newly acquired property.
 b. Plaintiff could obtain an easement to another parcel of property with suitable or provisionally suitable soils on which to place the ground absorption sewage treatment and disposal system. Plaintiff could install a sufficient system which would allow him to pump the effluent offsite from Lot 871 to the property.
 c. Plaintiff could install a septic system incorporating both pre-treatment (sand or peat filter) and a subservice drip irrigation (hereinafter "drip *Page 5 
irrigation system") under the extremely limited soils/site conditions described in Mr. McCloy's July 31, 2002 letter. The location of the septic system on Lot 871 would have to be determined first. The pre-treatment component would allow for a siting requirement of only 12 inches of provisionally suitable soil. The verticle separation between the drip lines and the saprolite and rocky layer would be a minimum of 6 inches. The Long Term Acceptance Rate for the subsurface drip irrigation would be 0.2. THE SEPTIC SYSTEM NEEDS TO BE DESIGNED (AND INSTALLED) BY A PROFESSIONAL ENGINEER OR INDIVIDUALS AUTHORIZED IN WRITING BY THE PRETREATMENT AND DRIP IRRIGATION MANUFACTURERS. THE SERVICES OF A LICENSED SOIL SCIENTIST IS REQUIRED FOR THE PRETREATMENT COMPONENT.
14. After plaintiff investigated his alternatives, he elected to buy an adjoining parcel of property on which to install a ground absorption sewage system. Plaintiff entered into an option to purchase Lot 861, the adjoining parcel of property, for the purchase price of $70,000.00. The option to purchase Lot 861 expired on November 30, 2004.
15. With respect to a drip irrigation system, as proposed by Mr. McCloy in his July 31, 2002, letter, the Full Commission makes the following specific findings of fact:
 a. At best, there may be 100 drip irrigation systems in the entire State of North Carolina;
 b. There are no such drip irrigation systems in Montgomery County; *Page 6 
 c. The State's witnesses with experience and knowledge about the drip irrigation systems, at best, have installed only twelve of these type systems;
 d. Of the approximate twelve systems the State's witnesses have installed, only six of the drip irrigation systems have been monitored;
 e. Even though these drip irrigation systems have been in existence for approximately ten years, the State's witnesses have only two years of experience with respect to the drip irrigation systems;
 f. The standard septic system costs one-tenth of the price of a drip irrigation system;
 g. The initial estimated cost for a drip irrigation system on Lot 871 would be approximately $35,200.00;
 h. A new drip irrigation system requires annual monitoring;
 i. The first year's monitoring costs $1,200.00, each subsequent year costs $600.00 to monitor;
 j. A new drip irrigation system requires annual lab tests which cost $200.00 per year;
 k. The drip irrigation system must be monitored and lab tests must be performed every year it is in place;
 l. The cost of monitoring and performing lab tests over the life expectancy of the drip irrigation system exceeds $24,000.00;
 m. The cost of a drip irrigation system is substantially more than other systems typically issued and installed in the State of North Carolina; and, *Page 7 
 n. In the instant case, neither the State, the State's witnesses, nor any person or entity that bid to install the proposed drip system would warrant the work or guarantee that the system would work for any period of time, or at all.
16. This matter initially came on for hearing before the Deputy Commissioner on September 15, 2004, at which time the hearing was postponed at defendant's request. The Deputy Commissioner directed defendant to ascertain whether a drip irrigation system would work on Lot 871, and if it would, that a permit be issued and obtained to install a properly designed drip irrigation system.
17. This matter came back on for hearing before the Deputy Commissioner on November 2, 2004. At the commencement of the November 2, 2004 hearing, the Deputy Commissioner requested that defendant present a permit issued by the Health Department authorizing and permitting the installation of a drip irrigation system. The Health Department had not issued any permit for the installation of a drip irrigation system, and when asked by the Deputy Commissioner, defendant did not know whether it would issue such a permit.
18. On October 15, 2004, defendant submitted a preliminary bid and specification plan for the design and construction of a drip irrigation system for Lot 871. The preliminary bid and specification plan states on its face that it is not for construction purposes. The preliminary plans and specifications were given without meeting the requirements as codified in15A NCAC 18A.1900, et. seq.
19. Defendant has failed to provide any evidence to show the Commission that the drip irrigation system as designed on the preliminary bid and specifications, not for construction *Page 8 
purposes, can be permitted, in large part because defendants' preliminary bid and specification plan fails to provide the information required in 15A NCAC 18A.1900, et. seq.
20. The Full Commission finds that it is unreasonable to require plaintiff to install a drip irrigation system on Lot 871 given that: (1) defendant failed to issue a permit; (2) the preliminary plans and specifications for the proposed drip irrigation system for Lot 871 do not meet the requirements of15A NCAC 18A.1900, et. seq.; (3) the proposed drip irrigation system for Lot 871 requires subsequent and substantial additional costs to install and maintain; and (4) neither the State, the State's witnesses, nor any person or entity that bid to install the proposed drip system would warrant the work or guarantee that the system would work for any period of time, or at all.
21. The Full Commission finds that it was reasonable for plaintiff to mitigate his damages by purchasing Lot 861 and installing a septic sytem on Lot 861 to pump the effluent from Lot 871.
22. Plaintiff presented evidence, and the Full Commmission so finds, that it has and will cost plaintiff the sum of approximately $96,044.30 to purchase Lot 861 and construct a suitable septic system on Lot 861, which is broken down as follows:
 • $70,000.00 — purchase additional lot
 • $5,000.00 — closing costs
 • $5,100.00 — installation of upgraded septic system on Lot 871
 • $150.00 — perk test on Lot 861
 • $5,380.49 — taxes on Lot 861 prorated over 30 years
 • $513.81 — Lake Tillery taxes on Lot 861
 • $250.00 — April 6, 2004, appraisal *Page 9 
 • $500.00 — August 9, 2004, appraisal
 • $9,150.00 — homeowner's dues over 30 years on Lot 861
 $96,044.30 TOTAL
23. The Full Commission finds that since the time in which plaintiff intended to construct his residence in 2002 and 2003, the cost for construction has increased by at least 5.8%. As a result, plaintiff will spend at least $21,200.00 more to construct his residence, if he is able to complete construction by mid-2005.
24. Plaintiff was not able to obtain a building permit due to defendant's negligence. The damages plaintiff has incurred are not attributable to plaintiff's actions.
25. Defendant has not presented any evidence to show that plaintiff has been able to prevent or preclude any of the damages he seeks to recover.
 ***********
In accordance with the directives of the North Carolina Court of Appeals and based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff and defendant NCDENR are properly before the North Carolina Industrial Commission. N.C. Gen. Stat. § 143-291.
2. The North Carolina Industrial Commission has jurisdiction over plaintiff and defendant NCDENR.
3. The Commission has no subject matter jurisdiction over the Montgomery County Health Department or David Ezzell, individually. N.C. Gen. Stat. § 143-291; In re TRP,360 N.C. 588, 636 S.E.2d 787 (2006); Feldman v. Feldman,236 N.C. 731, 73 S.E.2d 865 (1953); In re Sauls,270 N.C. 180, 154 S.E.2d 327 (1967). *Page 10 
4. Under the Tort Claims Acts, negligence is determined by the same rules applicable to private parties. Bolkhir v. N.C. StateUniv., 321 N.C. 706, 709, 365 S.E.2d 898, 900 (1998). Plaintiff must show: (1) that defendant owed plaintiff a duty of care under the circumstances; (2) that the actions or omissions by at least one of the named employees of defendant constituted a breach of that duty; (3) that the breach was the actual and proximate cause of plaintiff's injury; and (4) that plaintiff suffered damages.Davidson v. University of North Carolina at Chapel Hill,142 N.C. 544, 543 S.E.2d 920 (2001).
5. The Full Commission Decision and Order filed October 3, 2005 in this matter contained Finding of Fact 9, which read "Prior to the trial in this matter, defendant admitted that they were negligent in issuing Permit No. 99291." Upon appeal of this matter to the Court of Appeals, defendant did not assign error to this finding of fact. Defendant's failure to appeal Finding of Fact 9 constitutes an admission of negligence, as held by the Supreme Court in itsper curiam decision. Watts v. North Carolina Department ofEnvironmental and Natural Resources,362 N.C. 497, 666 S.E.2d 752 (2008).
6. NCDENR owed plaintiff a duty of care in making a proper assessment of Lot 871 before issuing Improvement Permit No. 99291, authorizing the construction of a three-bedroom residence on the lot. Defendant failed in this duty of care when they admittedly negligently issued Permit No. 99291 upon discovering that the property was unsuitable for a ground absorption sewage system. Defendant's breach directly and proximately caused plaintiff to incur compensatory damages in the amount of $117,244.30.
7. In its discretion, the Commission taxes the costs of this action in the amount of $13,034.00 against defendant. N.C. Gen. Stat. §§ 6-20, 143.291.1.
 *********** *Page 11 
In accordance with the directives of the North Carolina Court of Appeals and based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Defendant North Carolina Department of Environmental and Natural Resources shall pay to plaintiff for compensatory damages the sum of $117,244.30.
2. Defendant North Carolina Department of Environmental and Natural Resources shall pay plaintiff the sum of $13,034.00 for costs and expenses.
3. Montgomery County Health Department and David Ezzel are hereby dismissed as party defendants.
This 19th day of August 2010.
 S/___________________
 LAURA KRANIFELD MAVRETIC
 COMMISSIONER
CONCURRING:
S/___________________ DANNY LEE McDONALD COMMISSIONER
S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1